First Trust & Savings Bank, Trustee under the Last Will and Testament of Lucius G. Fisher, Deceased, Appellant, v. Economical Drug Company, Appellee.

Gen. No. 32,531.

Opinion filed October 3, 1928. Rehearing denied October 16, 1928.

HOAG & ULLMANN, for appellant.

GOOD, CHILDS, BOBB & WESCOTT and EDWIN A. MUNGER, for appellee; JAMES B. WESCOTT and F. M. HARTMAN, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Complainant, as trustee of the estate of Lucius G. Fisher, deceased, filed its bill in equity against defendant praying for an injunction enjoining it from cooking and from selling in the premises demised to it in the Fisher Building, situate on the northeast corner of Van Buren and Dearborn Streets, in the city of Chicago, any edibles, except candy, etc. There was a reference to a master who reported that complainant was not entitled to the relief prayed and recommended that the bill be dismissed for want of equity. On a hearing before the chancellor, the report of the master, together with his recommendation, was approved, and a decree entered dismissing the bill for want of equity, and complainant brings the record to this court for review by appeal.

The term granted by the lease was 10 years from May 1, 1924. The premises demised were to be used as a drug store with the right to sell candy, cigars and soft drinks, and for no other purpose.

The clauses in the lease between the parties, which are involved in the controversy projected by the bill, are the following:

"That the lessor  *  *  *  has demised and leased *  *  *  stores  *  *  *  in the Fisher Building *  *  *  to be occupied by said lessee for a drug store, with the right to sell candy, cigars, and soft drinks, and for no other purpose whatsoever."

Paragraph 11. "The said lessee is hereby given the exclusive right to maintain a drug store in the said building, as aforesaid, with the limitations and restrictions herein contained, and also the exclusive right to sell cigars and cigarettes."

Paragraph 17. "It is expressly understood that the lease dated April 24th, 1916, from Charles B. Osborne, as trustee under said last will and testament of Lucius G. Fisher, deceased, to the John R. Thompson Company gives to said John R. Thompson Company the exclusive right to maintain a restaurant in said building, and the lessee herein further covenants and agrees that it will not sell anything in the way of edibles on said premises that will in any way conflict with said exclusive right, and that it will do no cooking on said premises."

The following clauses in the so-called Thompson lease (which lease is part of the evidence in the record) are pertinent to the rights of the parties to this suit, viz:

"The said lessee is hereby given the exclusive right to maintain a restaurant in said building, except in so far as the lessee of the buffet may furnish a free lunch to its patrons.

"The said lessee is hereby given the exclusive right to maintain a restaurant in said building but which

shall not include the right to sell liquor, cigars, to-bacco, or cigarettes except as hereinafter provided.''

A great deal of testimony appears in the record, taken before the master as to a custom prevailing in the so-called ''loop'' of the city of Chicago regarding what articles are ordinarily sold in a ''Drug Store,'' and to define the meaning of the word ''Drug Store'' within such local environment. Such evidence is not only enlightening but historically interesting. However, the inherent difficulty with such evidence is its immateriality to the relief sought by the averments of the bill and its prayer for relief. The whole controversy injected by the bill is confined to the breach of covenants in the lease regarding the occupation of the premises. In the granting clause the following words are used:

''That the lessor * * * has demised and leased * * * stores * * * in the Fisher Building * * * to be occupied by said lessee for a drug store with the right to sell candy, cigars and soft drinks, and for no other purpose whatsoever.

''The said lessee is hereby given the exclusive right to maintain a drug store in the said building as aforesaid, with the limitations and restrictions herein contained, and also the exclusive right to sell cigars and cigarettes.''

Then occurs the following provision in Paragraph 17, after reciting the making of the John R. Thompson Company lease with its exclusive right to maintain a restaurant in the ''Fisher Building'':

''And the lessee herein further covenants and agrees that it will not sell anything in the way of edibles on said premises that will in any way conflict with said exclusive right, and that it will do no cooking on said premises.''

The foregoing covenants and conditions run during the whole of the term demised in the lease, so that the expiration of the Thompson lease recited in the Drug

Company lease and the granting of a new term to the Thompson Company in no way affects or detracts from the force of the covenants and provisions above recited. Furthermore, there is no provision in defendant's lease that the landlord will not grant a renewal of the Thompson lease with an exclusive covenant to operate and maintain a restaurant in the building. So far as defendant is concerned the landlord was free to deal with the Thompson Company upon such terms and covenants to which they might mutually agree. It seems to us idle to contend that in effect defendant can in any way or manner influence the exclusive right which Thompson procured to operate a restaurant in the Fisher Building, either under the first lease or any renewal or extension of the same, so that defendant is in no way legally concerned in the renewal of the Thompson lease. It bears no equation to its rights in the premises. It is the contract of lease originally between complainant and the Home Drug Company, to the latter of whose rights defendant succeeded, which is the bone of contention. What a drug store by custom dispenses in the loop lends no light to the solution of the problem actually involved in this case. The question is not what a drug store may sell, but what the defendant under the covenants of the lease may not sell. This case must be decided within the four corners of the lease between the parties before us, and we cannot add to or detract from that document by giving any heed or attention to any contemporaneous conversations or oral agreements made either before or subsequent to the execution of the lease. Prior conversations are in law merged in the subsequently executed lease and subsequent ones are impotent to in any manner change the writing. *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102.

In the instant case defendant expressly admits its violation of the covenant not to sell edibles on the demised premises by admitting that it was selling edi-

bles thereon at and before the filing of complainant's bill. There is no ambiguity in the several clauses in the lease limiting the power of defendant in the conduct of its drug business. "That it will not sell anything in the way of edibles," and that it will in no way do anything that conflicts with Thompson's exclusive right to maintain a restaurant in the Fisher Building, and that it will do no cooking on the premises, are readily understood phrases and contain nothing of an ambiguous character, so that he that reads can easily understand. The words used to express the meaning intended were plain, and unambiguous, and need no construction. That defendant would sell no edibles nor do any cooking on the demised premises meant just exactly what the words naturally import, neither more nor less.

Defendant urges in argument that complainant is not entitled to maintain its bill for injunction because it has an adequate remedy at law by a suit in "Forcible Entry and Detainer," Cahill's St. ch. 57, a statutory remedy. This suggestion is highly impracticable. The object of renting premises is to make money from rentals. An action in forcible entry and detainer would be no adequate remedy. It would destroy the lease and leave the leased premises vacant and tenantless. Such would not be remedial. It would be destructive of the landlord's most valuable asset, the lease, together with the rent flowing therefrom. The only adequate remedy open to complainant was the one availed of by this proceeding to enjoin defendant from further violating the covenants which the bill avers defendant had violated, and at the time of the filing of the bill, continued to violate. Defendant in effect admits such violation. It seems but reasonable in the circumstances appearing from the record before us that the injunctional remedy prayed for is the only one that could give complainant adequate relief and the relief to which complainant undoubtedly is entitled. It cannot be disputed that there is no contractual rela-

tionship between the Thompson Company and the defendant, so that the Thompson Company could not maintain an action against defendant for its action in depriving the Thompson Company of the exclusive right granted to it in its lease to maintain and operate a restaurant in the Fisher Building. While it may not be the legal duty of complainant to protect the Thompson Company from being deprived of its contract right under its existing lease by the conduct of defendant depriving it of the exclusive right, granted to it in its lease, to operate a restaurant in the Fisher Building, yet it cannot be gainsaid that from a moral viewpoint complainant should do all things needful and possible to protect the Thompson Company from any invasion by anybody in the enjoyment of all the rights granted to it by complainant under the existing lease. This injunctional proceeding, if given effect by an injunctional order, as prayed for, will have the effect of protecting the Thompson Company against the invasion of defendant, which, if permitted to continue will deprive it from availing of the right granted to it to exclusively maintain and operate a restaurant in the Fisher Building. This will at least operate to prevent a multiplicity of suits which is another arm of equity jurisdiction, and likewise enables complainant to protect the Thompson Company in the right granted to it by its lease to operate exclusively a restaurant in the Fisher Building.

The remedy of complainant for the alleged breach of the covenant in its lease inhibiting it from selling edibles and from cooking upon the demised premises is by injunction. There are many authorities which so hold. Among them are the following: *Bryden v. Northrup,* 58 Ill. App. 233, where the premises were demised to be occupied for studio, salesroom and dwelling purposes and for no other purposes. A subtenant of the lessee fitted up a part of the premises for

a saloon. In affirming a decree restraining such use of the demised premises, the court said:

"The words of the lease made a condition that the premises should be occupied 'for no other purpose' than those mentioned. *White v. Naerup,* No. 5351, this court * * *.

"To prevent the occupation for a purpose within the prohibition in the lease, equity will interfere. Taylor, Landlord & Tenant, sec. 416." The court affirmed the decree granting an injunction.

In *Star Brewery Co. v. Primas,* 163 Ill. 652, the court puts this query in its opinion affirming an injunctional decree for a violation of a covenant similar to the one in the instant case:

"Under these circumstances is there any reason why an injunction will not lie to restrain a use of the property, which is contrary to the terms of the clause in question?" And answering the question, we say, "None." To a similar effect is *Davis v. Driver,*— Tex. Civ. App. —, 271 S. W. 435, where the tenant was enjoined from violating a restrictive covenant in the lease as to occupancy. The premises were leased, the opinion reads, "to be used and occupied as a drug store and jeweler stand * * * and not otherwise." A decree was entered enjoining the tenant "from preparing, cooking, selling, and serving food * * * in a building leased by appellees to appellants by written contract, which provides that the premises are 'to be used and occupied as a drug store, * * *.'" The space under lease opened into the lobby of the Roselyn Hotel in a three-story building, the bill alleging that the appellants without consent "began a café and restaurant business on the premises leased to them, preparing, cooking, selling, and serving meat, mashed potatoes, * * * pie, sandwiches, etc., in violation of the lease * * *. Appellants urge that the judgment of the court is erroneous because appellees had an adequate remedy at law." Continuing,

the court in affirming the injunctional judgment order, said:

"It is our opinion that the lessors are within their rights in limiting the use of the leased premises to any specific business by contract, and that the stipulation in the lease contract excludes the idea of permitting the use and occupancy of the leased premises as a café or restaurant." *Weil v. Abrahams,* 53 N. Y. App. Div. 313; *Consolidated Coal Co. of St. Louis v. Schmisseur,* 135 Ill. 371, in which latter case the court, *inter alia,* said:

"It is well settled, that whenever the use to which premises are sought to be appropriated is inconsistent with the purposes for which they were let, and the change will operate to the injury of the lessor, the aid of such court may properly be invoked. In respect of purely negative covenants annexed to or contained in contracts or leases, courts of equity will frequently interpose by injunction, and indirectly enforce specific performance of such negative covenants by prohibiting their breach; and it seems to be well settled, that where there is an express negative covenant, courts of equity will entertain bills for injunction to prevent their breach, although the same will occasion no substantial injury, or though the damages, if any, be recoverable at law. This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such conditions and covenants as he pleases touching the mode of enjoyment and use of the land. As said in *Steward v. Winters,* 4 Sandf. Ch. 587: 'He is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has a right to define the injury for himself, and the party contracting with him must abide by the definition.' (*Hill v. Miller,* 3 Paige, 254; *Macher v. Foundling Hospital,* 1 Ver. & B. 188; High on In-

junctions, 1142.) In this latter class of cases the court proceeds upon the ground that the grantor or lessor having expressly stipulated that the grantee or lessee shall not do the particular thing complained of, the latter is bound to refrain, and the former is not required to submit to the opinions of others as to whether he will or will not suffer substantial injury."

In *Sullivan v. Monahan,* 123 Ill. App. 467, the premises were leased "for the purpose of conducting a saloon business." The tenant quit the saloon business and in its place conducted a restaurant. In reversing a judgment for the defendant in forcible entry and detainer where there was a restrictive covenant, the court said:

"It is conceded that the only question presented for our consideration and determination is, whether the language in the lease, viz.: 'for the purpose of conducting a saloon business,' should be held to constitute an express or necessarily implied covenant restricting the use by appellees of the leased premises to the saloon business, or whether the right of appellees to conduct a saloon business is thereby merely super-added to their right, in the absence of any restrictions, to use the premises for any purpose for which they are adapted, so long as they commit no waste or nuisance.

"The familiar rule of interpretation, that the expression of one thing is the exclusion of another, seems applicable in the construction of the lease here involved. The purpose for which the premises were to be used being expressed, it follows that their use for any other purpose must be held to be, by necessary implication, if not by express covenant, prohibited."

In the case *supra,* the court ruled that notwithstanding the lease did not provide that the premises should not be used for any other purpose than the one designated in the lease, still that the expression of one use by implication precluded the right of the tenant to

use the demised premises for any other use than the one specified in the lease.

In consonance with what we have said in the expression of our views regarding the right of complainant to the injunctional relief prayed, the decree of the superior court dismissing complainant's bill for want of equity is reversed, and the cause is remanded with directions to the superior court to enter a decree enjoining defendant permanently, as prayed for in the bill.

*Decree reversed and cause remanded with directions.*

WILSON and TAYLOR, JJ., concur.