TATE, Judge.
A landlord brought this summary proceeding to evict his tenant from certain city premises. The landlord appeals from ¡judgment dismissing his suit.
In 1954 the premises were leased by a former owner to the partners of the “Town and Country Drug Store”. Plaintiff Tynes purchased the property in January 1956. In October 1957 the original lessees, with the written approval of Tynes, assigned their lease rights to the defendant Kelly. The present suit by Tynes to evict Kelly from the leased premises was filed following expiration of the initial five year term provided by the lease.
Tynes’ contentions are: (1) that Kelly’s attempted renewal of the lease for an additional five years was not timely under the terms of the lease; and (2) that Kelly’s alleged violation of certain conditions of the lease entitles Tynes to a cancellation thereof.
The original lease was executed on November 7, 1953, before completion of the building in which the leased premises are situated. The term of the lease was stipulated to be “for a period of five (5) years commencing on or about December 20, 1953 * * * [but] should said premises not be completed by December 20, 1953, said lease will begin as soon thereafter as said premises are available for occupancy.” (Italics ours.) As a further consideration of the lease, the lessees were given the option of a renewal for an additional term of five years “provided lessees notify Lessor sixty 60 days prior to the termination of said lease, in writing.” (Italics ours.) The lease further provided “that the property herein leased is to be leased as a ‘drug store’ only.”
Plaintiff’s first contention, that notice of renewal was not made timely, is based upon his argument that the lease commenced on December 20, 1953 and therefore expired five years later on December 20, 1958; and that thus the written notice of renewal received by him on October 31, 1958, was not within 60 days of the termination of the lease as required by it.
As noted above, however, the lease was to begin, if the premises were not “completed” by December 20, 1953, then “as soon thereafter as said premises are available for occupancy.” We find that the trial court’s determination that the premises were not completed or available for occupancy any earlier than' the middle of January, 1954 to be completely supported by the evidence; so that therefore the written notice of renewal was timely.
In the first place, the first payment under the lease was made on March 1, 1954, to pay the rent for the month of March. By the practical construction given by the par *56 ties to it, the lease did not commence and the premises were not “available for occupancy” (within the. meaning assigned to the term in the lease) until this date, immediately after which the drug store opened for business. In the second place, the evidence reflects that the floor was not laid nor the electrical work completed until the middle of January, 1954, no earlier than which date could the lessees move in their fixtures. (If the temporary storage of a few items before such date could be considered an occupancy within the meaning of the lease, which we doubt, nevertheless there is no evidence that such incidental storage took place earlier than January 1, 1954; so that the written notice of renewal of October 31, 1958, is nevertheless timely, even if the rather strained construction of the lease term “available for occupancy” is adopted so as to commence the lease upon the date of storage of a few items in an uncompleted premises.)
Plaintiff’s second argument, that he is entitled to cancel the lease because of defendant’s breach of certain of its conditions, was not advanced until after the expiration of the initial five year term, and not until after the defendant Kelly had refused to accede to his landlord’s contention that the notice of renewal was not timely. (It is not inappropriate at this point to observe that a practical consideration motivating Tynes’ desire to have Kelly’s lease declared cancelled is that Tynes is now able to secure a higher rental for the premises.)
This second argument is founded upon the assertion that the tenant is violating the lease condition that the premises be used “as a ‘drug store’ only” because there is a lunch counter and because there are several pinball machines situated within the drug store premises. There is also a further assertion that the lights and decorations of the pinball machines are unsightly and detrimental to the property so as to violate another lease clause prohibiting display upon the property of “dangerous, unsightly, or detrimental” signs or decorations.
The lunch counter and the pinball machines have been maintained on the premises since or soon after the commencement of drugstore operations in March of 1954, and continuously thereafter until the present. That the drugstore premises were being so used was evident when plaintiff Tynes became owner of the leased property in 1956, and also when defendant Kelly acquired the lease in 1957 by an assignment to which Tynes consented.
No protest as to' such use was made by the landlord until the controversy arose concerning whether the lease had been timely renewed. Subsequently, on February 13, 1959, the landlord for the first time notified the tenant of his claim that such activities constituted a violation of the conditions of the lease.
The practical construction of the lease contract by the parties to it from its inception until the commencement of the present litigation indicates that within the contemplation of the parties the activities and the appurtenances now'belatedly questioned by the landlord were permissible to the tenant and were not violations of any lease conditions. We think that such practical construction by the parties themselves affords under the circumstances the best guide to interpretation of the lease contract provisions.
See LSA-Civil Code Art. 1956: “When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.” See also Texas Company v. McDonald, 228 La. 353, 82 So.2d 37; James v. Le Blanc, La.App. 1 Cir., 95 So.2d 175.
*57 We therefore do not sustain plaintiff’s contention that the lease has been breached in these particulars. We may further add that we see little justification for plaintiff’s assumption that the contract stipulation that the premises be operated as a “drug store only” could be interpreted to limit the use of the premises solely to the sale of drugs or medicine. In its ordinary signification in present day America, the term “drug store” denotes an emporium devoted to the sale of many other things besides drugs, such as notions, sodas and beverages, toys, lunches, cosmetics, etc. (see 28 C.J.S. Drug, sub-heading Drug Store, p. 497); and within the connotation of the term is the operation therein of pay telephones, pinball machines, and other customer-attracting devices.
An additional contention is made by the plaintiff-lessor to the effect that payoffs in cash (rather than free games) are made to winners in connection with the ■operation of the pinball machines, and that this constitutes use of the property for an illegal purpose, gambling; and that the lease is avoidable or unenforceable for this reason.[1]
We note the absence of any criminal prosecution for gambling; and, as did the trial court, we doubt that the extremely vague and undetailed testimony of five teenagers proves to a legal certainty that the defendant Kelly conducted any gambling operations upon the premises. But in any event, we think to be controlling the decision in Governor Claiborne Apartments v. Attaldo, 228 La. 381, 82 So.2d 323, where similarly a landlord sought to cancel an otherwise legal lease because of alleged incidental gambling operations conducted on the premises. In denying the relief sought, our Supreme Court stated, 82 So.2d 324, that “we know of no law that would warrant the cancellation of a lease between private individuals because one of them purportedly violated a criminal law.”
For the foregoing reasons, the judgment dismissing these eviction proceedings is
Affirmed.

. Cited as authority in support of this contention is the broad statement at 32 Am. Jur. “Landlord and Tenant” Section 48, p. 466, that when premises are “let with the knowledge and intent of both parties that they are to be used for an illegal purpose, the lease is illegal, void, and unenforceable.” The present lease was not let for an illegal purpose; but aside from that, the text of Section 48 further explains that “since a court of equity will not intervene to cancel an illegal contract if the parties thereto are in pari delicto, equity will not decree the cancellation of a lease executed to carry out a purpose prescribed by positive law or by accepted moral standards, but will leave the parties where their conduct has placed them.” The general rule stated by this encyclopedia is that, in the absence of a contract provision or statute affording such relief, a lessee does not forfeit the term of his lease by using the demised premises for an illegal purpose or business. 32 Am.Jur. “Landlord and Tenant”, Section 864, p. 730 and following.