In the Matter of the Estate of Arthur G. Corbin, Deceased, Defendant-Appellant, v. McKey and Poague, Inc., as Agent for Sherry Apartments, Inc., Plaintiff-Appellee.

**Gen. No. 52,547.**

First District, Third Division.

January 16, 1969.

McKenna, Scovel & Gannon, of Chicago (Joseph D. Gannon, of counsel), for appellant.

Yale P. Bass, of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The estate of the decedent appeals from a judgment in the Circuit Court, Probate Division, which granted a portion of the lessor's claim for rent alleged to be due the lessor from the estate.

The decedent, Arthur Corbin, died on November 5, 1966, at which time he was the lessee of an apartment for a term ending on September 30, 1968. The lease was binding on the heirs, executors, and assigns of the lessor and of the lessee. At the time of the decedent's death, the rent had been paid for the month of November. Joseph D. Gannon, an attorney, was named executor in the will but was not appointed as executor by the Probate Division until January 23, 1967.

On November 8, 1966, the named executor attempted to gain entry into the apartment but was refused entry on the ground that he did not possess Letters Testamentary evidencing his appointment by the Probate Court. On that date, the lessor plugged the door lock to the apartment. On several occasions after November 8th, the executor attempted to gain access to the premises and was rebuffed until the Letters were finally issued on January 23, 1967. During this period, the lessor's agents and the executor named in the will engaged in correspondence and

communications during which the lessor's agents indicated that the executor would be allowed to enter but later such entry was denied until the Letters Testamentary were issued. The apartment was rented to another tenant on April 15, 1967.

The lessor filed a claim against the estate for the balance of the rent under the lease which amounted to $3,960. The estate counterclaimed for the security deposit of $330. The trial court allowed the lessor's claim for rent for the period of December 1, 1966, to April 15, 1967, in the sum of $742.50 and allowed the estate a credit of $330 for the security deposit. The resulting judgment amounted to $412.50 in favor of the lessor. The estate appeals from this judgment on the ground that the estate should not be held liable for any rent from December 1, 1966, to April 15, 1967.

The estate contends that because the lessor deprived the named executor from access to and control of the apartment for over two and one-half months, the lessor thereby abrogated the lease and was therefore not entitled to further rent payments after the month of November, 1966. In its reply brief, the estate specifically argues that the denial of entry by the lessor constituted an eviction of the heirs and assigns of the decedent thereby relieving the tenant of the payment of future rent.

■ ■ This court is of the opinion that the lessor's act of plugging the door lock did not constitute an eviction so as to excuse all future rental payments. The manifest intent embodied in the lessor's actions was to delay the estate's right to possession of the premises until the proper Letters Testamentary had been issued. The record discloses no intent on the part of the lessor to permanently deprive the estate of its use and possession of the premises. There simply was no actual eviction in the instant case. A constructive eviction must be "something of a grave and *permanent* character done by

the landlord with the intention of depriving the tenant of the enjoyment of the premises." (Emphasis supplied.) Morgan v. Cook, 213 Ill App 172, 175.

However, there remains the issue whether rental liability was suspended during the time when the executor was denied access to the apartment prior to his appointment. The estate contends that section 79 of the Probate Act (Ill Rev Stats 1965, c 3, § 79) gives the executor named in the will the power and the duty to take possession of the apartment of the decedent-lessee prior to the issuance of Letters Testamentary. Section 79 reads in pertinent part:

> "Before issuance of letters to an executor his power extends to the carrying out of any gift of the decedent's body or any part thereof, to the burial of the decedent, the payment of necessary funeral charges, *and the preservation of the estate;".* . . . (Emphasis supplied.)

The lessor asserts that the executor could have applied for Letters of Administration to Collect under section 105 of the Probate Act (Ill Rev Stats 1965, c 3, § 105) to protect and preserve the estate from the contingencies of waste and loss due to the delay in the issuance of Letters Testamentary. However, the relevant question before this court is the construction and applicability of section 79 and the determination of the executor's power under section 79. Therefore, a consideration of section 105 is not essential to a proper disposition of this appeal.

The estate asserts that the executor's preappointment power and duty to enter the decedent's apartment was authorized by the statute's extension of preappointment powers to ". . . the preservation of the estate." The estate cites Faubel v. Michigan Blvd. Bldg. Co., 278 Ill App 159, in support of this contention. The case is distinguishable in some respects from the instant case

since in the cited case there had been a wrongful conversion of the decedent's personalty in the leased premises prior to the issuance of Letters Testamentary to the named Executrix. However, the court stated that the party named as executrix had, prior to the issuance of Letters Testamentary, a special "property right" in the personalty in the premises so as to maintain an action for trover for the lessor's wrongful conversion. The court relied on the forerunner to section 79 in establishing this "property right." The earlier statute was almost identical to the present statute except that the former statute employed the phrase "taking care of the estate" rather than "the preservation of the estate." The court also expressly recognized that the executrix, under the statute, had a duty to preserve the property of the testator prior to the issuance of the Letters Testamentary.

It is the contention of the estate in the case at bar that this "property right" and obligation to protect the personalty of the decedent was not recognized and was frustrated by the lessor. It is argued that the lessor's refusal to grant the executor access to the apartment prevented the executor from showing the apartment to prospective sub-lessees in order to protect the estate from loss from rent claims for the unoccupied apartment. This court can conceive of situations in which it would not be unreasonable for a lessor to seek further assurances of the regularity and propriety of one's representations that he is the named executor before allowing him to gain entry to the decedent's premises. This court can also conceive of situations in which it would be of the utmost urgency to allow such entry prior to the issuance of Letters. Under the facts of the instant case, we conclude that the lessor was not reasonable in denying access to the premises for over two and one-half months. The executor was a reputable attorney, and the lessor's attorney had corresponded with him as such during this period.

We are of the opinion that this wrongful act of the lessor and his agents excuses the estate from rental liability for that period. The lessor argues that Paragraph Nine of the lease contains a waiver provision which will not excuse liability for rent. The relevant paragraph reads:

> "Neither the Lessor nor his agents shall be liable for damages, to the Lessee or to any person claim-ing through Lessee (*nor shall rent be abated*) for injury to person or damage to or loss of property wherever located from any cause or for damage claimed for eviction actual or constructive; this provision includes particularly but not exclusively all claims arising from the building or any part thereof being or becoming out of repair including appurtenances, equipment, furnishings, fixtures or apparatus located in the demised premises or in the building or premises of which said demised premises are a part, *or from any act or neglect of Lessor or his agents* or of any tenant or occupant of such building or of the premises of which such building is a part, or of the neighboring property." (Emphasis supplied.)

The cases are numerous which state that any doubt or ambiguity as to the meaning of language in a lease is construed most strongly against the lessor and in favor of the lessee. Exculpatory clauses are to be strictly construed against the party they benefit. (Stein v. Yarnall-Todd Chevrolet, Inc., 85 Ill App2d 228, 229 NE2d 331.) We will not construe the words "any act" in paragraph nine to be so all-inclusive as to mean that when a lessor wrongfully deprives a tenant of possession, the rental obligation is not abated. Such a result would be ludicrous and unconscionable. Since the withholding of possession was unjustified in the case at bar, the consideration for the payment of rent, namely the use and possession

of the premises, was suspended for that period. See Cottrell v. Gerson, 371 Ill 174, 20 NE2d 74.

For the foregoing reasons, the judgment of the trial court is reversed in part and remanded with directions to limit the lessor's recovery by excluding rental liability which accrued during the period when the executor was denied access to the apartment. Since the November rent had been paid by the decedent prior to his death and since the estate does not contest this payment, the estate is relieved of its obligation to pay rent for the period beginning on December 1, 1966 and terminating on January 23, 1967.

Reversed in part and remanded with directions.

SCHWARTZ and DEMPSEY, JJ., concur.