BELVIDERE SOUTH TOWNE CENTER, INC., Plaintiff-Appellee, *v.* ONE STOP PACEMAKER, INC., *et al.*, Defendants-Appellants.

Second District   No. 76-320

Opinion filed November 23, 1977.

John C. McCarthy and Curtis W. Nyquist, of Williams, McCarthy, Kinley, Rudy & Picha, of Rockford, for appellants.

Strom, Strom, Oakley & Ellis, of Belvidere, and Maynard, Brassfield & Cowan, of Rockford, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Plaintiff, Belvidere South Towne Center, Inc. (hereinafter "plaintiff"), brought a declaratory judgment action against the defendants, One Stop Pacemaker, Inc. (hereinafter "Pacemaker"), and Nabors of Illinois, Inc. (hereinafter "Nabors"), for the interpretation of a shopping center lease covering realty located in Belvidere, Illinois. Plaintiff is the owner and landlord of the shopping center. Pacemaker is a tenant of plaintiff and operates a supermarket and package liquor store. Nabors is a tenant of plaintiff and the operator of a drugstore which retails a wide variety of merchandise, including food products.

On September 22, 1966, Pacemaker executed a lease with plaintiff and became the first tenant in this shopping center. On October 12, 1972, Pacemaker signed another lease with the plaintiff, similar to the previous lease. This lease provided "that the leased premises shall be used and occupied by Tenant for the operation of Supermarket and Package Liquor Store and that no other similar business shall be allowed in said Shopping Center."

Nabors is immediately adjacent to Pacemaker and entrance to either store is available through a common passageway. On September 28, 1972, Nabors executed a 15-year lease with plaintiff with options to extend the lease another 15 years. Nabors' lease provided at paragraph 10 that the "[t]enant will use and operate the demised building *for the purpose of a Drug Store*; provided, that Tenant shall be under no obligation to operate a pharmacy. So long as Tenant operates its pharmacy in the demised building, Landlord shall not lease any portion of property owned, directly or indirectly, by it within a five mile radius of the demised building for use as a pharmacy dispensing prescriptions." (Emphasis added.)

Pacemaker filed an answer to plaintiff's complaint and also filed an amended counterclaim-third-party complaint against both plaintiff and Nabors, which were later withdrawn. Nabors counterclaimed against the plaintiff, seeking a declaration that it was entitled to sell food items. Following a nonjury hearing, the trial court found that Nabors had violated the restrictive covenant in paragraph 10 of its lease, which, in the trial court's opinion, prohibited Nabors from the sale of those items not included among the merchandise commonly sold in a drugstore. Accordingly, the trial court entered a permanent injunction enjoining Nabors from "selling on or from the premises at Belvidere South Towne

Center, Boone County, Illinois, any of the following items: meats of any kind, dairy products, including, but not limited to milk, cheese and ice cream, bread and bakery goods, fresh fruit and vegetables, breakfast foods, canned goods, soft drinks, frozen foods, or any other grocery products except those of a dietary nature, or candy and gum." The trial court also found against Nabors in its counterclaim against plaintiff. The enforcement of the judgment order and writ of permanent injunction has been stayed pending Nabors' appeal from the judgment entered and the order denying its post-trial motion.

It is conceded that Nabors sells various food items and did not commence the sale of these food products until October of 1974. It is also admitted that the various food products that Nabors sells are competitive with the line of goods sold by Pacemaker and, therefore, if the covenant contained in Nabors' lease providing that he shall operate a "drugstore" prohibits the sale of food products, Nabors would be in violation of this covenant.

The definitions and legal interpretation of what encompasses a "drugstore" are numerous and varied. The following is just a sample of the authorities: A drugstore is "a place where drugs are sold." (Black's Law Dictionary (4th ed. rev. 1968).) Webster's New World Dictionary (2d College ed. 1970) defines a drugstore as "a store where medical prescriptions are filled and drugs and medical supplies are sold; most drugstores now also sell a wide variety of merchandise." The term "drugstore" also has been interpreted by the courts as "an emporium devoted to the sale of many other things besides drugs, such as notions, sodas and beverages, toys, lunches, cosmetics, etc." (*Tynes v. Kelly* (La. App. 1959), 116 So. 2d 54, 57. See also *Crest Drug Store, Inc. v. Levine* (1948), 142 N. J. Eq. 652, 61 A.2d 190; *Aiello Bros. v. Saybrook Holding Corp.* (1930), 106 N. J. Eq. 3, 149 A. 587.) Section 3 of the Pharmacy Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 55.3) defines a drugstore as a place where drugs, medicines or poisons are dispensed, sold or displayed; or a place where prescriptions are filled, dispensed or compounded.

The lease in the instant case did not define the term "Drug Store" and did not include any descriptive language to qualify or limit its application in this lease. Contrast *First Trust & Savings Bank v. Economical Drug Co.* (1928), 250 Ill. App. 112, 115, where the lease provided that the premises were to be used "for a drug store with the right to sell candy, cigars and soft drinks, and for no other purpose whatsoever." The court stressed the fact that the covenant expressly limited the lessee's operation of anything other than a drugstore and forbade the lessee from selling edibles.

Nabors first contends that by common usage and legal definition a drugstore may sell food items. Nabors relies on *Tynes v. Kelly* (La. App. 1959), 116 So.2d 54, 57, where the court interpreted a restrictive covenant

in a lease which provided that the premises were to be used "as a drugstore only," to include the operation of a lunch counter and pinball machines. Nabors also places reliance on *Crest Drug Store, Inc. v. Levine*, where the court construed a clause in a lease which allowed the sale of "other commodities incidental to the maintenance of a modern drugstore" to permit the tenants to sell newspapers and magazines, noting it was "a matter of common observation that commodities sold in a modern drugstore are as varied and numerous as in a general store, from alarm clocks to liquor, from hairpins to greeting cards." (61 A.2d 190, 192.) The court further noted that it was "common knowledge as well as disclosed by the record that many drugstores in this State are department stores to a greater or lesser degree." 61 A.2d 190, 192.

■■ Here, however, the issue is not what the common usage or legal definition of a drugstore is or what a drugstore may sell, as Nabors contends, but whether the trial court's interpretation of this lease is fair and reasonable based upon a consideration of its provisions and language. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272.) As stated in *Chicago Title & Trust Co. v. Northwestern University* (1976), 36 Ill. App. 3d 165, 168, 344 N.E.2d 52, 55:

> "The cardinal rule in the interpretation of a lease is that the court should ascertain and give effect to the intention of the parties, and that in so doing the court may take into consideration the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease, as well as the purpose or object the parties had in mind in entering into the lease * * *." *South Parkway Building Corp. v. South Center Department Store, Inc.* (1958), 19 Ill. App. 2d 14, 25-26, 153 N.E.2d 291, 296.

■■■ In the instant case, the lease provided that Nabors was to use the premises "for the purpose of a Drug Store." Nabors opened for business on April 5, 1973, and began the sale of food products in October of 1974. Pacemaker had been operating a supermarket and package liquor store immediately adjacent to Nabors since 1966. We are well aware, as Nabors contends, that language in a lease use-restriction clause is to be construed most strongly against the landlord and in favor of the tenant. (*In re Estate of Corbin v. McKey & Poague, Inc.* (1969), 105 Ill. App. 2d 120, 245 N.E.2d 117.) However, it is equally well settled that "[a] lease, wherever possible, should be construed reasonably and in such a manner as will be most equitable to the parties and give neither party an unfair advantage over the other." (*Getzelman v. Koehler* (1958), 14 Ill. 2d 396, 404, 152 N.E.2d 833, 837.) We believe it is clear that the clause in the instant case, "[t]enant will use and operate the demised building for the purpose of a Drug Store," was intended by the parties to mean that Nabors would operate a drugstore and would not compete in the sale of

food products with Pacemaker, the adjoining tenant. This finding is established with particularity by the evidential facts that indicate Nabors did not begin to sell food items in competition with Pacemaker until it had been in business a year and a half; that 15-18 percent of Nabors' gross sales are derived from food products; that the majority of Nabors' advertisements in the local newspapers is devoted to drug and miscellaneous other merchandise. To interpret this clause in the manner in which Nabors requests would confer an unfair advantage on Nabors over Pacemaker, the first tenant in the shopping center and the only tenant selling food products from 1966 until 1974, when Nabors began selling food products.

We are not persuaded by Nabors' argument that the evolving nature of a drugstore in today's society cannot be encumbered by restrictions prohibiting the nature of items a drugstore may sell for the duration of the lease. While we do recognize the increasing multiplicitude of items being sold by a drugstore in today's society, we think it is clear that the intent of the parties to this lease in 1972 was that Nabors would not sell food product items in the operation of its drugstore.

■■ The issuance of a permanent injunction will not be set aside on appeal unless the trial court has abused its sound discretion, and this is clearly not such a case. (*Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 303 N.E.2d 448.) Accordingly, we affirm the order of the trial court permanently enjoining Nabors from selling food products in violation of the restricted covenant in paragraph 10 of its lease. However, as to the wording of the injunction, we are of the opinion that the injunction is not definite, clear and precise in its terms. (*Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 303 N.E.2d 448; *People ex rel. Traiteur v. Abbott* (1975), 27 Ill. App. 3d 277, 327 N.E.2d 130.) In particular, the injunction should be clarified as to what specific dietetic and sugar-free dairy and food products Nabors is allowed to sell as part of its operation of a drugstore. Therefore we affirm the trial court's granting of the permanent injunction, but we remand to the trial court for an entry of an order and writ consistent with this opinion.

Judgment affirmed; remanded with instructions.

GUILD and WOODWARD, JJ., concur.