### TOYS "R" US, INCORPORATED, a Delaware Corporation, Plaintiff–Appellant,

v.

### NBD TRUST COMPANY OF ILLINOIS, Successor Trustee to NBD Highland Park, N.A. formerly known as First National Bank of Highland Park, a national banking association organized under the laws of the United States, as

---

Trustee under Trust Agreement dated January 9, 1981 and known as Trust No. 3119, Imperial Realty Company, an Illinois corporation and Larry M. Klairmont, individually, Defendants–Appellees.

No. 89–1620.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1989.

Decided June 18, 1990.

Theodore A. Shapero, James A. Flesch, Philip L. Goldberg, Rudnick & Wolfe, Chicago, Ill., for plaintiff-appellant.

Charles E. Adler, Joseph I. Adler, Adler & Adler, Chicago, Ill., for defendants-appellees.

Before CUDAHY, POSNER, and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

A tenant brought suit against its landlord seeking, among other things, a declaration that the landlord was required to reasonably consent to a sublease and to proposed alterations to the exterior of the demised premises. Pursuant to the district court's request, the parties submitted the case for summary judgment on the record developed in conjunction with the tenant's preliminary injunction motion. The district court entered summary judgment for the landlord because it found that, under the terms of the controlling documents, the landlord was entitled to withhold its consent to a sublease and to alterations to the exterior of the demised premises. The tenant appeals. We reverse.

## I. Facts

Toys "R" Us ("Toys") is the assignee of the entire right and interest of the K–Mart Corporation, as lessee, of a lease between K–Mart and the First National Bank of Highland Park under a trust agreement dated January 9, 1981 and known as Trust No. 3119. Defendant Larry M. Klairmont holds the power of direction under this non-discretionary trust.[1] The lease period is ten years, running from August 1, 1983. K–Mart assigned this lease to Toys on February 6, 1987. The lease covers approximately 40,400 square feet of property located in a shopping center at the corner of Gulf Road and Milwaukee Avenue in Niles, Illinois. Paragraph 16 of the lease provides for the use, assignment and sublease of the property.

Klairmont formally consented to K–Mart's assignment of the lease to Toys by a letter dated February 3, 1987 (the "assignment letter"). Paragraph 2 of this assignment letter memorializes Klairmont's consent to the assignment and describes Toys' use of the demised premises as follows:

> We consent to the assignment of the interest of K–Mart under the Lease to [Toys] and Toys shall be entitled to all the rights and benefits of the tenant under the Lease, provided that ... (d) Toys' use of the Premises shall be a Kids 'R' Us store which shall be used for the sale of infant, children and juvenile clothing, apparel, shoes, accessories, furnishings and other items or services (including a children photo studio and hair-cutting salon) sold by the Toys Kids 'R' Us Division.

In March of 1987, Toys opened a Kids "R" Us store which used approximately 25,000 of the 40,400 square feet of its leased property. Klairmont was aware, beginning in at least April of 1987, that Toys was looking for a subtenant to fill the remaining space.[2] Some months later, Klairmont offered to assist Toys in finding a suitable subtenant. Appellant's Appendix at 182. In December, Toys told Klairmont that it had entered into an agreement with the owners of the Famous Footwear

---

1. Because the trust is nondiscretionary and is controlled by Larry M. Klairmont (and his son), the appellees shall be referred to collectively as "Klairmont." See Appellant's Appendix at 50–52.

2. There is some evidence that Klairmont knew that Toys was looking for a subtenant even earlier than this time. A letter from Toys to Klairmont, dated December 31, 1986, describes Toys' plans for the demised premises and states that Toys "ha[s] left approximately 47 feet of frontage for an adjacent Tenant." Appellant's Appendix at 180. This letter should have given Klairmont some idea that Toys intended to sublet some of its space to another commercial enterprise.

shoe chain ("Famous Footwear")[3] to sublease part of the unused space Toys was leasing and requested Klairmont's consent. *Id.* at 183.

That same month, and apparently for the first time, Klairmont advised Toys that, under the terms of the assignment letter, Toys was limited to operating a children's clothing store on the demised premises. Appellant's Appendix at 184. Klairmont offered, however, to modify the lease and release Toys from its rental obligations with respect to the portion of space that Toys had planned on subletting to Famous Footwear. Klairmont would then be able to control the exterior of the storefront as well as the use the space was put to. *Id.*

In January of 1986, Toys requested, in response, that it be released from its obligations under the lease for the entire 15,-000 square feet of space it was not using. Klairmont responded by again offering to release Toys from its rental obligations with respect to only 7,000 feet (the amount of space Toys was proposing to sublease to Famous Footwear) because Klairmont regarded the rest as "virtually non-leasable because of the configuration which [Toys] cut out for the existing Kids 'R' Us store." Appellant's Appendix at 186.

In April of 1988, Klairmont again rejected Toys' plan to sublease 7,000 feet of space to Famous Footwear on the grounds that Toys' use of the property was limited to operating, or subletting to, a children's clothing store. Klairmont did, however, reiterate its offer to release Toys from its rental obligations for the same 7,000 feet of space. Appellant's Appendix at 187. In October, Toys went ahead and entered into a sublease with Famous Footwear for the operation of a shoe store. Famous Footwear planned to alter the exterior of its leased space by constructing a new door and store front. Plans for Famous Footwear's proposed modifications to the exterior of the demised premises were sent to

Klairmont but Klairmont never expressly accepted or rejected them.

Repeated and unsuccessful attempts by Toys to obtain Klairmont's consent to the sublease and to the exterior alterations led to this litigation. Jurisdiction is predicated on diversity of citizenship. Plaintiff, Toys "R" Us, Inc., is a citizen of the states of Delaware, where it is incorporated, and New Jersey, where it maintains its principal place of business. Defendants, NBD Trust Company of Illinois (Successor Trustee to NBD Highland Park Bank, N.A., formerly known as The First National Bank of Highland Park), and Imperial Realty Company are incorporated in Illinois and also maintain their principal place of business in Illinois. Defendant Larry M. Klairmont is a citizen of Illinois. The amount in controversy exceeds $50,000. Illinois law controls by choice of the parties. Finding of Fact No. 24; Lease ¶ 46.

Originally, Toys brought suit for a preliminary injunction[4] requesting a declaration that Klairmont had an obligation to approve the sublease and also requesting that Klairmont be compelled to consent to Toys' sublease with Famous Footwear. Toys also sued Klairmont for tortious interference with the sublease. The parties submitted the case for summary judgment on the record developed in connection with the preliminary injunction motion. The district court granted summary judgment in favor of Klairmont on all counts. Toys appeals. We reverse.

## II. Analysis

We review the district court's entry of summary judgment *de novo*. *Central States, S.E. & S.W. Areas Pension Fund v. Jordan*, 873 F.2d 149, 152 (7th Cir.1989). In construing a lease, "a court is to give effect to the intention of the parties as expressed in the language of the document when read as a whole." *Western Assets Corp. v. Goodyear Tire & Rubber Co.*, 759 F.2d 595, 599 (7th Cir.1985).

---

3. The Famous Footwear chain is owned by the Wohl Shoe Company, Inc.

4. At oral argument, the appellant abandoned its request for an injunction. We will therefore not review or address this aspect of the district court's decision.

When the language of a lease is unambiguous, the intention of the parties is to be determined from the language of the lease alone. *Id.* Whether or not an ambiguity exists is a question of law for the court to decide. *Joseph v. Lake Michigan Mortg. Co.*, 106 Ill.App.3d 988, 62 Ill.Dec. 637, 639, 436 N.E.2d 663, 665 (1982); *Illinois Bell Tel. v. Reuben H. Donnelley Corp.*, 595 F.Supp. 1192, 1196 (N.D.Ill.1984). In determining whether an ambiguity exists as a matter of law, a court may consider parol and extrinsic evidence. *Sunstream Jet Exp. v. International Air Service Co.*, 734 F.2d 1258, 1268 (7th Cir.1984) (citations omitted). We now turn to the record in order to try to determine the intent of the parties with respect to Klairmont's duty to consent.

### A. *Klairmont's Obligation to Consent to a Sublease*

■ The lease and the assignment letter are not ambiguous as to whether Klairmont has an obligation to consent to a sublease. Paragraph 16 of the original lease is entitled the "Use, Assignment and Subletting" provision and speaks to the uses for which Toys is permitted to utilize the property as well as to Toys' right to sublet. In this regard, the provision states that:

> [t]he Demised Premises may be used for any lawful retail purpose except as a massage parlour, a pornographic bookstore, a so-called "adult theater," industrial or warehouse use, for the sale of alcoholic beverages, or as a grocery store, delicatessen, bakery, or restaurant. Tenant shall not be obligated to conduct or to remain open for the conduct of any business in the Demised Premises ... Tenant may not assign this Lease or sublet the whole or any part of the Demised Premises, without first obtaining Landlord's consent thereto, which consent shall not unreasonably be withheld....

The differentiation between the rights to "use" and to "sublet" in paragraph 16 of the lease tells us that the two clauses were intended to serve very different functions.

Paragraph 2 of the assignment letter, however, speaks only of Toys' *use* of the property. This paragraph does not speak of Toys' right to *sublet* at all. Given the absence of any reference to subletting, and the fact that the parties apparently regarded a use clause as plainly different from a right to sublet clause, we think paragraph 2 of the assignment letter does not, and was not intended to, modify Toys' right to sublet. Indeed, how could it? This paragraph of the assignment letter, unlike the corresponding paragraph in the lease, does not speak to the issue of subletting at all.

Moreover, we reject Klairmont's contention that paragraph 2(d) of the assignment letter contains its own language of limitation with respect to Toys' right to sublet. The district court found that the "use" language in paragraph 16 of the lease was permissive, but that the "use" language in paragraph 2(d) of the assignment letter contained additional "use restrictions" on Toys' employment of the property. Conclusion of Law No. 8. But, there is simply no *limiting*, or restrictive, language in paragraph 2(d) of the assignment letter. The word "use" is not normally a word of limitation or restriction. And this court will not imply limiting language in an agreement that does not contain any. *Braeside Realty Trust v. Cimino*, 133 Ill. App.3d 1009, 89 Ill.Dec. 25, 27, 479 N.E.2d 1031, 1033 (1985), *citing Iser Electric Co. v. Ingran Construction Co.*, 44 Ill.App.3d 640, 3 Ill.Dec. 269, 272, 358 N.E.2d 667, 670 (1976); *In the Matter of Goldblatt Bros., Inc.*, 766 F.2d 1136, 1139 n. 3 (7th Cir. 1985).[5]

The parties could have bargained for a limitation of Toys' right to sublet. The parties could have agreed, for example, that Toys' use of the leased property was *"limited to"* that of a children's clothing store. Or the parties could have agreed

---

**5.** *See also* Restatement (Second) of Property (Landlord and Tenant) § 15.2(2) (1977) ("[T]he landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a free-ly negotiated provision in the lease gives the landlord an absolute right to withhold consent.").

that the demised premises would be *"used only for"* such a clothing store. It is useful to compare the assignment letter with Klairmont's December 18, 1987 letter to Marc Keschl, Toys' Director of Real Estate, which states that, under the terms of the assignment, Toys' was *"limited to* operating the store premises as a Kids 'R' Us store." But, the assignment letter itself does not contain these words of limitation. Instead, the parties agreed only that "Toys' use of the Premises shall be...." This language is descriptive, not limiting.

It is well settled that a lease provision that describes the use of property will be considered permissive, and not restrictive, absent a clear and specific indication that the landlord intended to limit the tenant's use of the property. *Forman v. United States,* 767 F.2d 875, 880 (Fed.Cir.1985). For similar policy reasons, language in a use clause will be interpreted most strongly against the landlord and in favor of the tenant. *Belvidere South Towne Center, Inc. v. One Stop Pacemaker, Inc.,* 54 Ill. App.3d 958, 12 Ill.Dec. 626, 629, 370 N.E.2d 249, 252 (1977) (citing to *In re Estate of Corbin v. McKey & Poague, Inc.,* 105 Ill. App.2d 120, 245 N.E.2d 117 (1969)). For all the foregoing reasons, we therefore find that the record in this case is devoid of any "clear and specific" indication that paragraph 2(d) of the assignment letter was intended to limit Toys' right to sublet through a limitation of Toys' right to use the demised premises.[6]

Paragraph 1 of the assignment letter says that the lease remains unamended, unmodified and in full force. As such, the language of the original lease should control whether Klairmont has an obligation to consent to a sublease by Toys to Famous Footwear or to some other company. Paragraph 16 of the lease reads, in relevant part, that the "Tenant may not assign this lease or sublet the whole or any part

of the Demised Premises, without first obtaining Landlord's consent thereto, which consent shall not be unreasonably withheld." We find, therefore, that Klairmont has a duty to consent, on a reasonable basis, to a sublease by Toys to some third party.

In light of this conclusion, there are several unresolved issues of fact to be resolved in the district court. One of these is the question whether Klairmont's refusal to consent to the sublease was reasonable or not. The reasonableness of Klairmont's refusal is hotly contested. Toys asserts that Klairmont withheld its consent because it wanted to lease to Famous Footwear directly, thereby claiming Famous Footwear's rent for itself. Klairmont, on the other hand, claims that it wanted to lease to Famous Footwear directly so it could preserve the present character of the shopping mall. There is also the issue whether Klairmont was given enough financial information about Famous Footwear to be able to make an informed judgment about Famous Footwear's solvency as a subtenant. These issues demand resolution, presumably by trial.

### B. Klairmont's Obligation to Consent to Exterior Alterations

We next consider whether Klairmont has an obligation to consent to exterior alterations of the demised premises. "A contract is ambiguous where the language used is reasonably susceptible to more than one meaning." *Susmano v. Associated Internists of Chicago,* 97 Ill.App.3d 215, 52 Ill.Dec. 670, 673, 422 N.E.2d 879, 882 (1981); *see also Illinois Bell Tel. v. Reuben H. Donnelley Corp.,* 595 F.Supp. 1192, 1197 (N.D.Ill.1984). Paragraph 11 of the lease states that:

> Tenant may, at its own expense, from time to time make such alterations, additions or changes, structural or otherwise,

---

6. The conclusion we reach on this issue is consistent with the common principle of contract construction that the terms of a document are to be interpreted against the drafter. *First Nat. Bank of Elgin v. G.M.P.,* 148 Ill.App.3d 826, 102 Ill.Dec. 259, 262, 499 N.E.2d 1039, 1042 (1986); *see Windsor at Seven Oaks v. Kelly,* 113 Ill.

App.3d 978, 69 Ill.Dec. 791, 793, 448 N.E.2d 251, 253 (1983). Since Klairmont drafted the assignment letter, and could easily have inserted limiting language dealing with Toys' right to sublet, we will not now insert such language into the assignment letter on its behalf.

in and to the Demised Premises as it may deem necessary or suitable; provided, however, Tenant shall obtain Landlord's prior written consent to drawings ·and specifications for such alterations, additions or changes, which consent shall not unreasonably be withheld, and provided that Landlord shall not withhold its consent thereto if the structural integrity of the Building, the market value of the Building and the use of the Building as a retail facility will not be impaired by such work nor if such alterations or changes are not to the exterior of the Demised Premises or the Building ...

The district court found that Klairmont was entitled to withhold its consent to Famous Footwear's proposed alterations because these alterations would alter the exterior of the demised premises. The district court apparently read paragraph 11 of the lease to say that Klairmont could refuse to agree to any and all alterations to the exterior of the building. Conclusion of Law No. 9. Klairmont defends this result on appeal by pointing to the plain language of the lease.

The district court's interpretation, which is urged on appeal by Klairmont, is not, however, the only possible reading of paragraph 11. The relevant phrase reads that the landlord's "consent shall not unreasonably be withheld, and provided that Landlord shall not withhold its consent thereto if ... [the] alterations or changes are not made to the exterior of the building." The provision may also have been intended to provide that Klairmont could not, for any reason, withhold its consent from nonexterior alterations, but that Klairmont could *reasonably* refuse to consent to exterior alterations.

Thus, paragraph 11 of the lease has two plausible meanings, equally plain. One is that the Klairmont has no obligation to consent to exterior alterations. The other is that Klairmont has an obligation to consent to nonexterior alterations, but that it can withhold its consent to exterior alterations where reasonable. We cannot resolve this ambiguity on the record before us and must remand for the consideration of ex-

trinsic evidence or other appropriate fact-finding.

### C. Tortious Interference with Contract and with Prospective Business Advantage

In Counts IV and V of the complaint, Toys alleged tortious interference on the part of Klairmont. The district court granted summary judgment for Klairmont on the ground that Toys had failed to present sufficient affirmative evidence to support its tortious interference claims. Conclusion of Law No. 13. In Illinois, the claims of tortious interference with contract and tortious interference with a prospective business advantage require that the actions of the alleged interferer have been without legal justification. "Legal justification" is determined by assessing a number of factors, "including the interest sought to be protected and the method used." *Getschow v. Commonwealth Edison Co.*, 111 Ill.App.3d 522, 67 Ill.Dec. 343, 349, 444 N.E.2d 579, 585 (1982).

This means that Klairmont "must [have been] acting to protect a conflicting interest that is considered to be of equal value to or greater than [Toys'] contractual rights, and [Klairmont's] acts must [have been] legal acts ... not unreasonable under the circumstances." *Id.* (citation omitted). We think that Klairmont's actions were justified in the legal sense. By refusing to agree to Toys' and Famous Footwear's plans, Klairmont was trying to maintain control over its shopping center. Klairmont attempted to make its case under the debatable language of the lease and assignment letter. This was not unreasonable *ex ante* and, hence, there is no merit to these claims.

### III. Conclusion

Therefore, on the issue of Klairmont's duty to consent, on a reasonable basis, to a sublease, we find that the lease and the assignment letter are not ambiguous as a matter of law and that Klairmont does indeed have such an obligation. Since the reasonableness of Klairmont's refusal is

hotly contested, the question whether Klairmont breached the lease by withholding its consent presents an issue of fact to be resolved presumably by trial. In addition, the lease is ambiguous on the question whether, when and under what circumstances Klairmont has a duty to consent to the exterior alterations proposed by a subtenant. Parol or other extrinsic evidence may be received on this issue. The judgment is reversed and remanded for further proceedings not inconsistent with this opinion. Circuit Rule 36 shall apply on remand.

REVERSED AND REMANDED.