**HANSON NATURAL RESOURCES COMPANY, a Delaware general partnership, Plaintiff–Appellee,**

v.

**AUTOMATED COMMUNICATIONS, INC., a Colorado corporation, Defendant–Appellant.**

**No. 95CA0129.**

Colorado Court of Appeals, Div. I.

Aug. 8, 1996.

Rehearing Denied Sept. 26, 1996.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

Stone & Associates, P.C., Patricia Jo Stone, Lakewood, for Plaintiff–Appellee.

Waldbaum, Corn, Koff, Berger & Cohen, P.C., Michael H. Berger, Denver, for Defendant–Appellant.

Opinion by Judge CRISWELL.

In this forcible entry and detainer action, the district court entered summary judgment for plaintiff, Hanson Natural Resources Company (Hanson), a sub-lessor of approximately 41,000 square feet of office space to defendant, Automated Communications, Inc. (ACI), the sub-sub-lessee, declaring that the written sub-sub-lease, which provided that the premises were to be used "as general offices only," prohibited ACI from having a dog on the premises. The court also awarded Hanson attorney fees pursuant to a provision of the sub-sub-lease calling for such an award. ACI appeals, and we reverse.

The pertinent evidence before the trial court disclosed the following:

Prior to the execution of the sub-sub-lease, ACI, which provides long-distance telecommunications services, occupied other office space in the Denver metropolitan area for a number of years. During ACI's occupation of that space, ACI's president engaged in the practice of bringing one or more of her pet dogs to work with her.

It is undisputed that, prior to the execution of the sub-sub-lease, Hanson's representatives were aware of this practice and told ACI's president that such a practice would not be allowed. ACI asserts that, in response, ACI informed Hanson that, if the sub-sub-lease would prohibit its president from bringing a pet to work with her, ACI would not sub-lease the premises. However, even though certain Hanson representatives recommended that a specific provision prohibiting pets on the premises should be added to the sub-sub-lease, this was not done. And, because the instrument tendered by Hanson to ACI contained no such specific prohibition, ACI accepted it.

Thereafter, ACI's president continued her practice of bringing a pet dog to work with her. Several months after ACI occupied the premises, Hanson purported to promulgate a rule prohibiting dogs on the premises, except those whose function is to aid the visually impaired. However, because ACI found no authority for the promulgation of such a rule, its president ignored it.

Thereafter, Hanson gave ACI notice of default under the sub-sub-lease, and when its president continued to bring her pet to work with her, Hanson commenced this forcible entry and detainer action, seeking to recover possession of the premises.

ACI defended the action on two grounds. First, it asserted that nothing in the sub-sub-

lease prohibited it from allowing its employees to bring pets to the office. Alternatively, it asserted that, given the circumstances attendant at the negotiation of the sub-sub-lease, Hanson was estopped from asserting that the lease instrument created any such prohibition.

The trial court held, as a matter of law, that a lease instrument restricting use of premises to a general office use, as the sub-sub-lease does here, "does not include the housing of dogs or animals as a permissible use." However, because of ACI's sizable investment in the sub-sub-lease, it concluded that it would be inequitable to dispossess ACI at that time. Hence, while it ordered that Hanson be given possession of the premises, it also directed that that order be stayed, conditioned on ACI not bringing or keeping any dogs on the premises during the remainder of the lease term.

■ ACI first argues that, particularly given Hanson's knowledge of the prior practice of ACI's president to bring her pet to the workplace, the sub-sub-lease, which contains no prohibition against animals on the premises, cannot be construed to prohibit the practice. We agree.

The question presented here is whether allowing an office worker to bring a pet to the office, whether it be a goldfish, a bird, a cat, a dog, or some other common household pet, is a use of the premises that is reasonably incidental to the permitted "general office" use. In this respect, we should note that there is no evidence that ACI "housed" the animal owned by the president. The evidence is that the animal was present only when the president was on the premises, but that the animal was provided with food and drink during that time.

Hanson has failed to cite, and we have not discovered, any prior opinion from any jurisdiction upon the precise issue presented here. And, previous opinions with respect to other claimed incidental uses are not helpful. *See School District RE–2(J) v. Panucci*, 30 Colo.App. 184, 490 P.2d 711 (1971) (use of property solely for storage is not a use "as a school house"); *see generally* Annotation, *Provision in lease as to purpose for which premises are to be used as excluding other uses*, 86 A.L.R. 4th 259 at 292–294 (1991).

Nevertheless, certain fundamental principles guide our conclusion here.

■ Absent a specific restriction, a tenant may make any use of the demised premises that is not illegal, does not create a nuisance, and does not cause damage to the reversion. *Southland Corp. v. D.C. Burns Realty & Trust Co.*, 166 Colo. 444, 444 P.2d 394 (1968). And, as a corollary to this principle, any specific use restriction imposed upon the tenant must receive a narrow interpretation, so as to allow the tenant the greatest freedom of use. *Belvidere South Towne Center, Inc. v. One Stop Pacemaker, Inc.*, 54 Ill.App.3d 958, 12 Ill.Dec. 626, 370 N.E.2d 249, 1 A.L.R.4th 936 (1977).

Hence, as general practices and concepts change, the limits of a particular use may be required to be expanded so as to allow uses consistent with those changed practices and concepts. *See Snow v. Winn*, 607 P.2d 678 (Okla.1980) (because of change in marketing practices in general, a filling station use must now be deemed to include the right to operate a convenience store); *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126 (Mo. App.1991) (same).

Given these principles, we cannot say, as a matter of law, that a "general office" use authorizes only desks, computers, telephones, and similar office equipment to be brought upon the property and used. Surely, it would be proper for a large employer of office workers, such as ACI, to establish a cafeteria, a nursery for its employees' young children, a medical aid facility, and a host of other ancillary uses on premises leased for general office use only.

Likewise, we cannot say that such an employer ceases to use the premises as general offices simply because it allows its employees to bring domesticated pets upon the premises. The undisputed evidence here, for example, is that ACI allowed such a practice for years at its previous location without apparent objection. And, in this day, in which employers seek to establish a more relaxed office atmosphere so as to increase employee morale and efficiency, we cannot conclude that allowing pets in the office-place violates the general terms of an office lease. Indeed, Hanson has failed to direct our attention to

any court decision that declares that such a practice violates a lessee's covenants, absent a specific prohibition in the lease.

Further, any landlord has the opportunity, as Hanson did here, to include a specific prohibition against animals on the premises. If the matter is of such importance to the lessor, prohibitory terms should be included in the written lease. Absent such a specific prohibition, nothing in the covenant restricting the use of the premises to office use only will constitute a bar to bringing domesticated pets upon the premises.

In reaching this conclusions, we acknowledge information in the record indicating that, on one occasion, a janitorial employee who went inside the leased premises encountered the dog which growled at her until restrained by the president. We also recognize that, quite aside from the question whether the bringing of a pet to work is a proper incidental use, if the activity creates a nuisance, it would, in any event, constitute a sub-sub-lease violation. However, Hanson did not allege that such had occurred, and the trial court did not base its judgment on that consideration.

The order and judgment are reversed, and the cause is remanded for further proceedings consistent with the views contained in this opinion.

METZGER and JONES, JJ., concur.