ILLINOIS BELL TELEPHONE CO.

v.

The REUBEN H. DONNELLEY CORP.

No. 83 C 8449.

United States District Court,
N.D. Illinois, E.D.

July 10, 1984.

See also 595 F.Supp. 1202.

Scott J. Davis, Howard J. Roin, Lee N. Abrams, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Byron L. Gregory, Steven H. Hoeft, Bruce H. Weitzman, Douglas C. Tibble, McDermott, Will & Emery, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This case involves the potential business "divorce" of the long standing marriage of Illinois Bell Telephone ("IBT") and the Reuben H. Donnelley Corporation ("RHD"). For over 60 years these companies have jointly produced telephone directories in Illinois. The instant dispute revolves around two current contracts governing publication of telephone directories: (1) an August 26, 1975 agreement, entitled "Publishing Agreement" ("Directory Agreement"), as amended, which provides that RHD is to publish

> Yellow Pages in telephone directories of the Telephone Company ... certain types of advertising in the alphabetical sections of such telephone directories of the Classified Telephone Directories and ... neighborhood directories comprised of groupings of areas and districts within Chicago ["The Directories"] and in formats agreed to between the parties hereto....

and (2) a June 29, 1966 agreement, entitled "Publishing Agreement Street Address Directories" ("ATD Agreement"), which provides that Donnelley is to publish

> Street Address Directories for Chicago and for such cities and towns or groups of such cities and towns outside of Chicago served by the Telephone Company ["ATD Directories"]. . . .

These directories are used frequently by many residents of the Northern District of Illinois. The Yellow Pages have become an invaluable tool to many businesses and consumers.

### IBT Action—83 C 8449

On November 22, 1983 in the midst of negotiations to renew the contracts governing production of these directories, IBT notified RHD by letter that IBT was cancelling both agreements pursuant to their terms. In accordance with its interpretation of the contracts, IBT also made certain demands upon RHD which are set forth in general summary form as follows: IBT demanded that RHD (A) immediately turn over to IBT all records pertaining to the Directories and the ATD Directories, (B) deliver these records organized in the form and manner in which they are currently filed or maintained, (C) refrain from making or retaining copies of any records pertaining to The Directories and the ATD Directories except copies used in publication of a particular directory that RHD is obligated to publish prior to November 22, 1984, the effective date of termination, (D) immediately assign to IBT all unexpired contracts for advertising beginning with the December, 1984 Directories, the January, 1985 Chicago Directories, and all Directories to be published thereafter, (E) immediately allow IBT to assume any and all RHD leases used in the publication of The Directories and/or the ATD Directories, except assignment of leases needed by RHD in publishing directories prior to November 22, 1984, the effective date of termination, (F) immediately begin negotiations for the sale to IBT of any or all equipment or fixtures used in connection with publishing The Directories or the ATD Directories for which RHD has no further need, (G) after November 22, 1984 discontinue publishing The Directories and refrain from publishing directories similar to The Directories or the ATD Directories, (H) immediately reproduce and deliver to IBT a copy of any or all programs, etc., which are part of the computer software developed by IBT and/or RHD for the purpose of compiling and/or composing The Directories, (I) avoid interfering with any offer of employment by IBT to any RHD employee engaged in the publication of The Directories or the ATD Directories, (J) immediately assign to IBT any and all expired leases for the ATD's on hand at the date of termination of the ATD Agreement, (K) deliver to IBT the equipment to which IBT is entitled under Clause 19 of the ATD Agreement, and (L) award IBT reasonable attorneys' fees and costs.

Anticipating that RHD would not agree with its interpretation of the contracts, IBT filed suit against RHD seeking specific performance of its demands and moving for summary judgment on its complaint. RHD moved to dismiss.

For the reasons hereinafter stated, this Court finds that IBT is not entitled to specific performance of its demands. Therefore, its motion for summary judgment is denied. This Court also concludes that even taking the allegations of the complaint as true and construing the complaint in the light most favorable to IBT, it can prove no set of facts entitling it to the relief it seeks. Therefore, RHD's motion to dismiss is granted. Plaintiff is granted leave to file an amended complaint within 28 days. While the Court has thoroughly considered all of the arguments of both parties in reaching its determination, it will discuss only those arguments necessary to explain its present decision, which will not be dispositive of this case.

### Clause 21—Termination—Directory Agreement

Clause 1 of the Directory Agreement provides that "[e]ither party may cancel

this agreement by giving prior written notice to the other one year in advance of the effective date of cancellation." Clause 21, titled "Termination" defines the rights and duties of the parties upon exercise of the cancellation right granted in Clause 1.

Clause 21, last amended in 1979, provides:

## CLAUSE 21—TERMINATION

The Telephone Company shall notify Donnelley in writing not less than ninety (90) days prior to the effective date of any such termination, whether it intends to have an assignment of such existing agreements or to enter into new agreements as aforesaid.

Upon termination of this agreement, at any time and for any reason, Donnelley shall upon request turn over all records pertaining to The Directories and assign to The Telephone Company any and all unexpired contracts for advertising in said directories effective for the issue following the termination date, and The Telephone Company shall have the right (1) to offer employment to any Donnelley employees engaged in publication of The Directories, (2) to assume any or all leases covering floor space, and (3) to purchase from Donnelley at a price mutually agreed upon at the termination date, any or all equipment and fixtures used in connection with publishing said directories and for which Donnelley has no further need.

Upon termination of this agreement, Donnelley shall discontinue publishing The Directories and The Telephone Company shall pay and Donnelley hereby agrees to accept as payment therefor all reasonable expenses incurred in such discontinuance, including but not limited to expenses incurred in termination of any and all leases, disposition or sales of fixed assets, and termination of employees. In addition to the foregoing, The Telephone Company shall pay the total costs provided in Clause 6 item (2) of this agreement, in connection with publication of the issues which terminate this agreement, and in consideration thereof, Donnelley waives all rights to receive the revenues from advertising sold in such issues.

Upon termination of this agreement, all reserves provided for in this agreement shall be terminated and (1) any credits in such reserves shall be paid by Donnelley to The Telephone Company, and (2) any debits in such reserves shall be paid by The Telephone Company to Donnelley.

Clause 19 and Clause 1 of the ATD Agreement contain language similar to Clause 21 and Clause 1 of the Directory Agreement. These clauses similarly provide that either party may cancel by giving prior written notice one year in advance of the effective date and that IBT shall be entitled to certain items "upon termination" of the agreement.

Pointing to Clause 21, IBT essentially contends that the words "upon termination" give it the right to the relief it seeks immediately, at the time IBT notifies RHD of its intent to cancel the Directory Agreement in accordance with Clause 1. IBT notified RHD of its intent to cancel the Directory Agreement, together with its demands by reason thereof, by letter of November 22, 1983. Anticipating that RHD would not accede to its demands and agree with its interpretation of the contract, IBT filed its complaint for specific performance and subsequently filed its motion for summary judgment to expedite a ruling thereon.

*Requirements For Summary Judgment*

■ Summary judgment may only be granted if the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Egger v. Phillips,* 710 F.2d 292 (7th Cir.1983). In contract actions, the summary judgment procedure is appropriate to resolve disputes involving the interpretation of unambiguous agreements. *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620 (8th Cir.1981). The preliminary question of whether an ambiguity exists is a question for the court to determine as a matter of law. *Joseph v. Lake Michigan Mortgage Co.,* 106 Ill.App.3d 988, 62 Ill.Dec. 637, 436 N.E.2d 663 (1982). The

court must look to the words used in the contract to determine the intent of the parties. *E.g., Western Illinois Oil Co. v. Thompson,* 26 Ill.2d 287, 186 N.E.2d 285 (1962). Absent ambiguity, the words of the contract are generally the sole indicators of what the parties intended. *Sunstream Jet Express, Inc. v. International Air Service Co.,* 734 F.2d 1258, at 1265–1269 (7th Cir. 1984); *Ambarann Corp. v. Old Ben Coal Corp.,* 395 Ill. 154, 69 N.E.2d 835 (1946). In other words, a contract is ambiguous only if it is reasonably susceptible to different constructions when read in its plain and ordinary meaning. *Susmano v. Associated Internists of Chicago, Ltd.,* 97 Ill. App.3d 215, 52 Ill.Dec. 670, 422 N.E.2d 879 (1981).

### Meaning of "upon termination"

■ In the instant case, this court finds the intent of the parties in using the words "upon termination" to be so clearly revealed from the contract itself, that evidence outside of the contract need not be considered. *Sunstream Jet Express, Inc. v. International Air Service Co.,* 734 F.2d 1258, at 1265–1269; *see Airline Stewards, etc. v. Trans World Airlines,* 713 F.2d 319 (7th Cir.1983). Notably, IBT has offered no evidence outside the agreement to aid in the interpretation of the disputed language and maintains that it should be interpreted without the aid of extrinsic evidence. (See Pl. Brief in Support of Its Motion For Summary Judgment at pp. 7–8 and footnote therein.) In such a case, no genuine issue of material fact exists, and the use of the summary judgment procedure is appropriate. *Green v. Valve Corporation of America,* 428 F.2d 342 (7th Cir.1970). Because this Court has determined that the contract can be interpreted from the language of the agreement itself, it is not necessary to look at matters outside the contract. Therefore, the Court has not deemed it necessary to treat the defendant's motion to dismiss as a motion for summary judgment.

■ Applying these principles to Clause 21, this Court finds that the plain and ordinary meaning of the words "upon termination" is at termination, or at the end, or when the contract ends. IBT's construction would require the words "upon termination" to mean "upon notice of termination" for certain parts of Clause 21 and "at termination" for other parts. Such a construction does not accord with the plain and ordinary meaning of the words, and therefore cannot prevail.

Beyond this, the entire contract also supports such an interpretation of the words "upon termination" in Clause 21, i.e. at termination. For instance, even under IBT's interpretation of the cancellation provision of the contract, IBT agrees that Donnelley is to publish Directories to be issued prior to November 22, 1984, the termination date of the contract. As a consequence, IBT acknowledges that Donnelley may keep copies of records necessary to issue such Directories until publication is complete. Thus, in order to give effect to other provisions of the contract, IBT must interpret Clause 21 to have two inconsistent meanings: Records are to be delivered to IBT upon notice of its intent to terminate the contract and yet records may be retained by RHD until the contract effectively ends.

In fact, the entire agreement reveals that the parties clearly intended to create a one-year notice period before cancellation became effective. Without a one-year notice period, the contract would not have been commercially feasible. If RHD had been the party to invoke the one-year cancellation provision of Clause 1, then under IBT's construction of Clause 21, RHD could have immediately turned over records pertaining to The Directories and immediately discontinued its publication of The Directories. There would have been no new yellow page directories for a considerable period of time. This potentially disastrous result is not borne out by the terms of the Directory Agreement. The one-year notice period was obviously designed to give IBT the time it needed to make alternate plans for publishing The Directories.

In addition to this obvious inconsistency in IBT's interpretation of the phrase "upon termination," its literal interpretation is confirmed by a consideration of the effect of the natural expiration of the contract which would occur one month and eight days after the November 22, 1984 termination date. Clause 1 of the Agreement provides that the agreement is effective with the 1975 issues of The Directories and covers subsequent issues up to and including the Directories issued prior to December 31, 1984 and the Chicago Classified Telephone Directories issued in January, 1985 or any extension of that particular issue. If IBT had not invoked the cancellation provision of Clause 1, IBT would have no claims to any records before the natural expiration of the contract on December 31, 1984. Yet, using the device of the notice to terminate a little over a month before expiration, IBT seeks to gain immediate possession of records which it otherwise could not have received prior to the natural expiration date. Use of such a device to radically change the expiration procedures is not supported by the language of the contract or any of its provisions and would seem contrary to the intent of the parties. IBT's argument in this regard is a classic example of circular reasoning. IBT asserts that, if the agreement had not been cancelled, IBT would have known that it was to publish directories itself in early 1985 and would have requested those records in advance so that it could prepare to do so. IBT states that, if RHD had refused a request to turn over records, IBT would have simply issued a notice of cancellation, thus obtaining a right to receive the records. Such reasoning is circular since it assumes the conclusion that notice of cancellation triggers the right to immediate receipt of the records.

Although IBT's claims for immediate relief must fail with this Court's interpretation of the words "upon termination", this Court has considered the parties' positions with respect to other language of the Directory Agreement. In the interests of assisting the parties in their business planning, but reserving the right to receive additional evidence should that be appropriate, this Court offers the following tentative interpretations of other disputed contract provisions.

### The Meaning of Records

Clause 21 states that "Donnelley shall upon request turn over all records pertaining to the Directories...." IBT alleges that this means all records, including all copies of such records. RHD maintains that it intended "all records" to mean records which IBT had delivered to RHD during the term of the contract and not the 20 item list which IBT sets forth on pp. 3–4 of its notice of cancellation letter. (Letter Dated November 22, 1983 from John M. Coruthers, Assistant Vice President Directory and Public Services of IBT to Michael J. Collins, Senior Vice President Midwest Region of RHD—Exhibit B to Plaintiff's Complaint). RHD argues that the parties did not intend or understand that "all records" would include the 20 item list which IBT now demands, and points to the depositions of several IBT and RHD employees, which essentially indicate that the parties did not give thought to or define the phrase "all records" as it was used in Clause 21.

Again, Illinois contract principles require this Court to read the term "all records" in its plain and ordinary meaning. The plain and obvious import of "all records pertaining to the Directories" is that RHD is to deliver to IBT the entire collection of records which it used in connection with its publication of The Directories. This Court does not find that this interpretation of "all records pertaining to the Directories" is inconsistent with the use of the term "records" in Clause 3 or the fact that the parties provided separately in Clause 20 for joint ownership of computer software upon termination of the agreement. Clause 3, entitled "Information Furnished By Telephone Company," speaks of "[a]ll records, list of names, telephone numbers, and other data *furnished*" by IBT. (emphasis added). Clause 21 speaks of "all records *pertaining* to The Directories." (emphasis

added). It is clear from difference in language of Clause 3 and Clause 21 that the words "all records" in Clause 21 is limited only by the phrase "pertaining to The Directories." If the parties had intended otherwise, other words such as "furnished by IBT" would have been used. Nor does the fact that the parties provided for joint ownership of computer software in Clause 20 require such a conclusion. Software programs are not records and have not been treated as such in the agreement.

In viewing the entire agreement, including the disputed provisions, it seems clear that the parties did not expressly consider the circumstances presented by the instant case, wherein RHD would continue to publish Yellow Page directories. In such circumstances, the court cannot create contract provisions for the parties to cover unplanned-for circumstances. *Chicago Housing Authority v. Stewart*, 40 Ill.2d 23, 237 N.E.2d 463 (1968). Instead, the court must construe the agreement according to its unambiguous language giving effect to the expressed intent of the parties, such as it is. *Schroud v. Van C. Argiris & Co.*, 78 Ill.App.3d 1092, 34 Ill. Dec. 428, 398 N.E.2d 103 (1979). This Court may not substitute a new or different contract for one which the parties did in fact make. *Id.; People of Illinois ex rel. Illinois State Scholarship Commission v. Harrison*, 67 Ill.App.3d 359, 24 Ill.Dec. 80, 384 N.E.2d 947 (1978). With these principles in mind, this Court concludes that the contract provides that on November 22, 1984, RHD will be required to turn over all records pertaining to The Directories to IBT. However, since IBT's demand for all records is immediate, IBT is not now entitled to the records it seeks.

IBT also seeks an order stating that RHD should not be allowed to retain any copies of the records, except copies needed in RHD's publication of The Directories before November 22, 1984. IBT also seeks an order requiring that RHD deliver the records organized in the form and manner in which they are currently maintained.

The contract principles outlined in the foregoing section equally apply to these demands. The language stating that RHD shall "turn over" all records to IBT does not state that RHD cannot retain copies. Again, the Court cannot write the contract for the parties and provide for situations which the parties themselves did not provide for.

Moreover, it would have been obvious to the parties that RHD would need to retain copies of all records pertaining to The Directories after termination in order to settle the financial arrangements between the parties, prepare and defend tax returns, and handle any claims that might be brought against RHD in the future relating to its actions over the approximately 60 years that RHD published The Directories. In the same vein, the provision of Clause 3 contemplated this result when it granted IBT the right, after termination, to enjoin RHD from use of records furnished by IBT for any purpose other than the performance of the agreement to publish directories with IBT. Therefore, IBT is not entitled to an order prohibiting RHD from making and retaining copies of records. Similarly, IBT's position that the records be delivered and organized in a particular form and manner is not provided for in the contract and will not be added to the contract by this Court.

*Assignment of Advertising Contracts*

IBT also contends that Clause 21 requires that RHD "assign to the Telephone Company any and all unexpired contracts for advertising in said directories effective for the issue following the termination date." RHD claims that the quoted language requires that it assign advertising contracts only for the first issue of The Directories following the termination date. This Court finds that, just as the meaning of the term "all records" is unambiguous, so is the language providing for the assignment of advertising contracts. Under the language of the contract, RHD must turn over at the termination date, November 22, 1984, all unexpired advertising contracts

effective for the issue following the termination date. The fact that some of these unexpired contracts may cover issues other than the first issue following the termination date cannot change the clear and unambiguous meaning of the above-quoted language. Clause 21 of the Agreement contemplates that the revenue from these contracts shifts to IBT which shall reimburse RHD pursuant to the formula set forth in the Agreement.

*IBT's Right to Offer Employment to RHD Employees, Assume RHD's Leases Covering Floor Space, and Negotiate for the Purchase of RHD's Equipment or Fixtures*

IBT also contends that the second paragraph of Clause 21 allows IBT to offer employment to RHD employees engaged in the publication of The Directories and/or the ATD Directories, to assume any or all leases covering floor space used in the publication of The Directories and/or the ATD Directories, and to immediately negotiate for the sale of any or all equipment or fixtures used in connection with publishing The Directories and/or the ATD Directories for which RHD has no further need. RHD contends that the language at the end of the third numbered provision, "for which Donnelley has no further need" modifies provisions numbered 1 and 2. Therefore, RHD concludes that IBT has no right to offer employment to RHD employees or assume RHD leases for which RHD has a further need. IBT, on the other hand, claims that the "last antecedent clause" principle of contract construction provides that generally in the construction of all written instruments, a qualifying phrase is to be confined to the last antecedent. IBT argues that this principle takes on additional force in the instant case because each of the three principal clauses of the sentence in question is designated by a different number, with each number clearly separating antecedent clauses.

The "last antecedent clause" principle of contract construction does support IBT's position. It provides that in the construction of a written instrument, a qualifying phrase is generally confined to the last antecedent in seeking to determine the intent of the parties. *E.g.*, *Storybook Homes, Inc. v. Carlson*, 19 Ill.App.3d 579, 583, 312 N.E.2d 27, 30 (1974). Applying this principle of construction to the disputed provisions would require this Court to confine the phrase "for which Donnelley has no further need" to the last antecedent, "equipment and fixtures used in connection with publishing said directories." Under such a construction, IBT would be free to offer employment to any Donnelley employees engaged in publication of The Directories and to assume any or all leases covering floor space, regardless of whether Donnelley had a further need for such employees or leases. However, even assuming that the "last antecedent clause" should be applied in that way for purposes of determining the intent of the parties, IBT would not be free to offer employment to RHD employees or assume RHD leases until November 22, 1984, the effective date of the contract's termination.

On the other hand, this Court notes that there are several persuasive reasons for finding that the "last antecedent clause" principle of contract construction cannot be applied in such fashion to this agreement. First of all, IBT's position is patently inconsistent. In one breath, IBT claims that the contract allows it to immediately assume all leases, offer employment to RHD employees and negotiate for the purchase of RHD's equipment. In the same breath, IBT states that RHD can retain leases, employees and equipment to the extent RHD needs such leases, employees and equipment to publish the 1984 Directories which IBT maintains RHD is obligated to publish under the Agreement. It is thus apparent that even IBT has difficulty in applying its own interpretation of the contract without fashioning an exception to its interpretation which the contract does not articulate. Another difficulty with IBT's interpretation is that it makes no sense to interpret the provision so as to allow IBT to take on all of RHD's leases, whether or not related to the Directories, but not the

equipment and fixtures located on those premises.

In addition, IBT's position is contrary to the clear meaning of the similar clause in a predecessor contract to the last Directory Agreement. This may be considered in determining the parties' intent. *Sunstream Jet Express, Inc.*, 734 F.2d 1258, at 1268. (Extrinsic or parol evidence may be considered where contact ambiguous and inconsistent). The predecessor to Clause 21 first appeared in the 1952 agreement which provided:

> Upon termination of this agreement, at any time and for any reason, Donnelley shall upon request turn over all records pertaining to the Classified Directory and assign to the Telephone Company any and all unexpired contracts for advertising in said Classified effective for the issue following the termination date, and the Telephone Company shall have the right:
>
> (1) to offer employment to any or all Donnelley employees; (2) to assume any or all leases covering floor space and (3) to purchase from Donnelley any or all equipment and fixtures,
>
> used in connection with said Classified Directory and for which Donnelley has no further need.

The enumeration of the three "rights" of IBT in one indented section, followed by the non-indented placement of the language "used in connection with said Classified Directory and for which Donnelley has no further need," supports the interpretation that IBT's right to assume leases, offer employment and purchase equipment was dependent upon RHD's further need for such leases, employees and equipment. In the 1966 and 1975 agreements and the 1979 amendment, the placement of the qualifying clause was merely changed to a line by line format, giving credence to RHD's position that there was no intended change in meaning with the qualifying language modifying all of the numbered provisions.

If this matter is ultimately submitted to the Court for a definitive ruling, further evidence may well indicate that the placement of the qualifying phrase was simply a decision made by the typist rather than a conscious decision by the parties. This conclusion is bolstered by the fact that the first paragraph of amended Clause 21 makes no sense:

> The Telephone Company shall notify Donnelley in writing not less than ninety (90) days prior to the effective date of any such termination, whether it intends to have an assignment of such existing agreements or to enter into new agreements as aforesaid.

The fact that the language refers to "such termination", and "such existing agreements" without a preceding reference to the obviously intended termination rights and amended manufacturing provisions, indicates that inadvertency, not intent to change the meaning of Clause 21, was at work in the typing of the 1975 amendment.

### RHD's Right to Publish Similar Directories

■■■■■■ The third paragraph of Clause 21 states that

> Upon termination of this agreement, Donnelley shall discontinue publishing The Directories and The Telephone Company shall pay and Donnelley hereby agrees to accept as payment therefor all reasonable expenses incurred in termination of any and all leases, disposition or sales of fixed assets, and termination of employees.

IBT maintains that this Clause requires that Donnelley discontinue publishing The Directories and directories similar to The Directories after November 22, 1984. Again, this Court finds that this contract does not so provide.

The term, "The Directories" is defined on the first page of The Directory Agreement as:

> WHEREAS, Donnelley is in the publishing business and desires to publish Yellow Pages in telephone directories of The Telephone Company and to publish certain types of advertising in the alpha-

betical sections of such telephone directories of The Telephone Company; and

WHEREAS, Donnelley also desires to publish city-wide Chicago Yellow Page Classified Telephone Directories and to publish neighborhood directories comprised of groupings of areas and districts within Chicago and in formats agreed to between the parties hereto, and

WHEREAS, The Telephone Company is willing and able to furnish the basic listing information for such directories, hereinafter referred to as "The Directories".

An examination of the above-quoted language reveals that "The Directories" fall into two categories:

(1) The first category, set out in the first WHEREAS paragraph limits the term to "telephone directories of The Telephone Company."

(2) The second category, set out in the second WHEREAS paragraph defines the term as "city-wide Chicago Yellow Page Classified Telephone Directories" and "neighborhood directories".

The third WHEREAS paragraph states that IBT is willing and able to furnish information for these two categories of directories, which will be referred to as "The Directories".

This Court finds that the intent of the parties was to define "The Directories" as directories published by RHD for which IBT supplied basic listing information. The language is not broad enough or worded so as to include directories "similar" to the IBT directories published under the Directory Agreement. Therefore, the language of Clause 21 which states that upon termination RHD will "discontinue publishing The Directories", did not constitute an agreement by RHD not to compete with IBT by publishing similar yellow page directories. It merely referred to a fact of termination.

Even if the language defining The Directories was broadly construed to include similar non-IBT directories, nevertheless the agreement does not contain an enforceable covenant not to compete that would prevent future directory competition by RHD. *House of Vision, Inc. v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21 (1967). Under Illinois law, covenants not to compete are subject to strict construction, and all doubts must be resolved in favor of natural rights and against restriction. *Southwest Industries v. Sharfstein*, 482 F.2d 915 (7th Cir.1972). By use of the words, "upon termination of this agreement, Donnelley shall discontinue publishing The Directories," within the context of Clause 21, it would seem that the parties did not intend to create a covenant not to compete, but rather to merely affirm what was to happen upon termination of the agreements.

The agreement does not bar competition or indicate any special consideration or limits on such a non-competition restriction, rendering it invalid for unreasonableness. Therefore, this Court concludes that IBT's complaint does not state a valid claim for specific performance of its demands. IBT's motion for summary judgment is denied, and RHD's motion to dismiss is granted without prejudice. IBT is granted leave to file an amended complaint within 28 days hereof.