INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), and its Local 592, Plaintiffs,

v.

SUNDSTRAND CORPORATION, Defendant.

No. 86 20184.

United States District Court, N.D. Illinois, W.D.

Dec. 16, 1986.

Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, Ill., Jay Whitman, Int. Union UAW, Detroit, Mich., for plaintiffs.

Stanley Craven, Spencer, Fane, Britt & Browne, Kansas City, Mo., Charles Thomas, Thomas, Keeling & Moore, Rockford, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

This is an action for breach of a collective bargaining agreement. The court has jurisdiction over the controversy pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The parties have filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56. Based upon the briefs and affidavits and for the reasons set forth below, the defendant's motion is denied and the plaintiffs' motion is granted in part.

## BACKGROUND

Plaintiffs International Union, UAW and its Local 592 (collectively hereinafter as "Union" or "UAW") are labor organizations within the meaning of the Labor

Management Relations Act of 1947, 29 U.S.C. § 141 *et seq.* Since 1946 the UAW has been the exclusive bargaining representative of certain employees of the defendant Sundstrand Corporation ("Sundstrand"). Sundstrand maintains manufacturing facilities in Rockford, Illinois.

Effective as of August 30, 1982, the UAW and Sundstrand entered into a collective bargaining agreement. ("Agreement") The termination clause of the Agreement provides as follows:

> **Section 19.1** This Agreement shall be effective as of the date hereof, and shall remain in full force and effect until midnight, May 25, 1986, and shall be automatically renewed under the same terms and conditions from year to year thereafter, unless between sixty (60) and ninety (90) days prior to the expiration of any contract period either party shall give to the other written notice of its desire to amend or terminate this Agreement. *If notice to amend is given,* such notice shall specify the section or sections in which changes are desired and *such sections only shall terminate* at the end of the contract period in which said notice is given. If notice to terminate is given, this entire agreement shall terminate at the end of the contract period in which said notice is given. (emphasis added). Within fifteen (15) days after the receipt of notice to amend or to terminate, the parties shall meet for the purpose of discussing the question of changes in the Agreement or a new agreement.

(Schneider Dep. Exh. 2 p. 80.)

On March 3, 1986, within the sixty-to-ninety day period prior to May 25, 1986, the UAW, over the signature of Local 592 President Duane Schneider, sent to Sundstrand by registered mail a letter providing in part as follows:

> "Pursuant to Article 19 of the Labor Agreement the Union is giving written notice of our desire to amend the Labor Agreement to reflect the following changes."

(Exhibit B to the Complaint)

Included as part of the UAW letter of March 3, 1986, ("Notice to Amend") were thirty-seven pages of proposals for changes in the collective bargaining agreement, including but not limited to proposals for changes in wage rates, health insurance, pensions, vacations, holidays, grievance procedure, seniority, job postings, hours and overtime, job classifications and job security. (*Exhibit B to Complaint*). The Notice to Amend did not cite for proposed amendment the no-strike clause (§ 15.1 of the agreement), the no lock-out clause (§ 15.3 of the agreement), nor other various individual Sections. (*See e.g.,* Sections 2.1, 2.3. through 2.6, 4.1, 4.3, 5.1, 5.6, 5.8, 5.9, 5.12, 5.13, etc. of the Agreement.)

Sundstrand did not file a Notice to Amend or a Notice to Terminate at any time.

Between March 3, 1986 and May 25, 1986, the parties' negotiating committees held approximately twenty bargaining sessions. These sessions included discussions over various items in the Union proposal, over various additional proposals made by the Union in negotiations, and over the issues and proposals raised by Sundstrand during the course of negotiations. Both the UAW and Sundstrand modified and withdrew proposals. (Affidavit of Sundstrand Vice President for Personnel and Public Relations Philip W. Polgreen as Exhibit C to *Defendant's Statement of Material Facts;* Affidavit of Local 592 President Duane E. Schneider).

The affidavit of Local 592 President Duane E. Schneider reveals that at a May 19, 1986 bargaining session, Paul Korman, Assistant Director of UAW Region 4 stated, "We reserve our right to amend, revise or withdraw any or all parts of our proposal." According to the affidavit, Sundstrand Vice President Philip Polgreen responded, "I understand that." (Paragraph 18, Schneider Affidavit). Schnedier's affidavit goes on to cite additional comments by Korman and Polgreen relevant to each party's right to withdraw proposals. (See paragraphs 19–21, Schneider Affidavit). Sundstrand has introduced no evidence con-

tradicting these references in Schneider's affidavit.

Before midnight on May 25, 1986, the UAW delivered to Sundstand a letter dated May 23 purporting to withdraw the March 3, 1986 Notice to Amend. This withdrawal letter reads:

This will confirm that, effective immediately, the UAW and its Local 592 withdraw their notice of March 3, 1986, to amend the 1982 Agreement ...

We regret that the parties have been unable to arrive at mutual agreement on the contractual modifications which might have replaced the provisions in question.

As Article 19, Sec. 19.1 provides, all the terms and conditions of the 1982 agreement are, under these conditions, "automatically renewed" for one (1) year, that is, until May 25, 1987. In particular, the assurances, Item #26, Statement of Agreement dated August 1982, remain in effect for that period. In addition, as is always the case under these automatic renewal provisions, certain ministerial changes must be implemented to continue these "same terms and conditions." For instance, any date-specific reference, e.g., holidays, cola, *etc.*, must be adjusted to the equivalent dates in 1986–87.

The UAW's membership will report for work on the next scheduled shift. Of course, we will be working under the newly renewed agreement.

As always, we remain ready to discuss these, and other issues that involve this bargaining unit.

(Schneider Dep. Exh. 14 Schneider Affd, Paragraph 12)

In response to the letter of withdrawal, Sundstrand delivered to the Union in the closing hours of May 25 a letter penned by Polgreen indicating that Sundstrand considered the Agreement to be terminated in total at midnight of May 25. (Schneider Affd, Paragraph 13, Schneider Aff'd, Exh. 19). Sundstrand thereafter locked out the unit employees. (It is disputed whether the lock-out commenced on May 25 or on May 26. *UAW & Local 592 Statement of Uncontested Material Facts; Defendant's Statement of Genuine Issues* ). Sundstrand terminated the lock-out on July 6, 1986.

On May 29, 1986, the Union commenced the present action for declaratory relief and damages alleging that Sundstrand breached the no lock-out provision of the collective bargaining agreement when it locked out the unit employees. The Union contends that the 1982–1986 Agreement automatically renewed itself in whole for an additional year (May 26, 1986 to May 25, 1987) by reason of the Union's withdrawal before Midnight May 25 of its Notice to Amend.

The plaintiffs offer an argument in the alternative should this court find that the Union's purported withdrawal was without legal affect. The Union contends that under the termination/renewal provision— section 19.1—the Notice to Amend caused the termination only of those contractual provisions cited for amendment. Since the Union did not propose amendment to the no-strike/no lock-out provisions of the contract, those sections, among others, automatically renewed on May 26. Accordingly, the Union argues, the parties were governed at least by a partial contract as of May 26 which prohibited the Union from striking and Sundstrand from locking-out.

Sundstrand defends this action on the bases that (1) the withdrawal of the Notice to Amend was not legally effective and (2) the Notice to Amend caused the collective bargaining agreement to terminate in total. Under Sundstrand's analysis the parties are left with neither a partial nor a complete contract and, absent a contractual prohibition against lock-out, Sundstrand's actions did not constitute a breach.

## OPINION

To prevail on a motion for summary judgment, a party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, — U.S. —, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

In the present case, the parties have cross-motioned for summary judgment on the legal issue of whether a contract existed after May 25 and, if so, did that contract contain a no-strike/no lock-out provision.

### DID ANY CONTRACT EXIST AFTER MAY 25, 1986?

The key to determining whether a contract existed after May 25 lies in the termination/renewal provision of the 1982 Agreement. Both parties urge this court to look beyond the language of section 19.1 in deriving its meaning. The court declines to do so.

■ If a contract is ambiguous, a court may consider extrinsic and parol evidence to determine the parties' intent. *Sunstream Jet Express, Inc. v. International Air Service, Ltd.*, 734 F.2d 1258, 1266–67 (7th Cir.1984). Section 19.1, however, is unambiguous. The first sentence of section 19.1 provides generally that the filing of a notice to amend or a notice to terminate the Agreement within a certain thirty-day period will forestall automatic renewal of the contract. But section 19.1 does not stop here. The second and third sentences detail what kind of termination each notice will cause. First, a notice to amend will result in *partial* termination only. That is, only those sections cited for amendment in the notice to amend will terminate come midnight May 25. Second, a notice to terminate will cause a termination of the entire contract. We find no ambiguity here. The language of Section 19.1 is clear and not reasonably susceptible to different meanings. *Illinois Bell Tele-*

*phone v. Reuben H. Donnelley Corp.*, 595 F.Supp. 1192, 1196–97 (N.D.Ill.1984).

■ In supporting its argument that the Union's Notice to Amend resulted in a total termination of the Agreement, Sundstrand focuses upon the first sentence of section 19.1 only and wholly ignores the second and third. This kind of selective reading is not reasonable, and, any meaning derived from such reading is likewise untenable.[1]

Sundstrand has also brought to this court's attention certain NLRB and federal appellate cases which hold that a notice to amend causes a total termination of the collective bargaining agreement. These cases are inapposite to the case at bar. The contractual provisions which are the subject of the cases cited do not contain language as found in the second and the third sentences of Section 19.1. *Deluxe Metal Furniture Co.*, 121 NLRB 995 (1958), ("This agreement shall remain in full force and effect from October 5, 1955 to January 10, 1958 and shall thereafter be continued for one year periods unless notice of termination or modification ... is given by either party."); *Oakland Press Co.*, 229 NLRB 476 (1977) (contractual provision substantially identical to provision in *Deluxe Metal*); *New Jersey Esso Employees' Assoc. and Exxon Co.*, 275 NLRB No. 46 (contractual provision substantially identical to provision in *Deluxe Metal.*) In the same way that this court will not look at extrinsic evidence to interpret an unambiguous provision, neither will the court rely on nonanalogous case law in determining the meaning of section 19.1.

■ The parties do not dispute the language of section 19.1; they dispute the interpretation to be given it. This court determines, however, that the meaning of section 19.1 is clear from its language. Since there is no genuine factual dispute,

---

1. Sundstrand also argues that the court should not read section 19.1 as permitting a "skeletal" contract to exist after May 25. Such a reading, says Sundstrand, is "ludricous". (Defendant's Reply Memorandum, pg. 16). In response to Sundstrand's argument the court points out the following. It is true that when two constructions of an agreement are arguable and one

would lead to an absurd result, the other construction is to be preferred. *Reserve Ins. Co. v. General Ins. Co.*, 77 Ill.App.3d 272, 32 Ill.Dec. 552, 395 N.E.2d 933 (1979). This rule however is one of *construction*, that is, it is applied to ambiguous provisions only. As we have noted, section 19.1 is unambiguous; it is not susceptible to more than one meaning.

this court rules as a matter of law that, pursuant to section 19.1, both parties' failure to file a notice to terminate caused the collective bargaining agreement to renew in some form on May 26. If it can be said as a matter of law that the Union's Notice to Amend was effective, that is, that the withdrawal of the Notice to Amend was not valid, then the parties clearly were left with only a partial contract on May 26 which contained a no-strike/no-lock-out provision (i.e., those provisions not cited by the Notice to Amend). If on the other hand, the withdrawal was effective, then the contract renewed itself in whole on May 26. But here again, the no-strike/no lock-out provision would have governed the parties' conduct after May 25. Since in either situation the no-strike/no-lock-out provision would have survived, the court need not decide at this point whether the contract renewed in whole.

## CONCLUSION

The court finds as matter of law that there existed on May 26 and thereafter a collective bargaining agreement between the parties containing, at least, a no-strike/no-lock-out provision. The parties are ordered to appear before the court for a settlement conference on January 16, 1987.