972 F.2d 351
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
BANNER AIRCRAFT RESALES, INC., Plaintiff-Appellee,
v.
ASPEN JET SALES, INC., Defendant-Appellant.
 No. 91-3609.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1992.
Decided July 27, 1992.
 
 Before CUMMINGS, MANION, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Appellant Aspen Jet Sales, Inc. (Aspen) appeals the district court's judgment in favor of appellee Banner Aircraft Resales, Inc. (Banner). We affirm.
 
 BACKGROUND
 
 2
 This controversy involves the consignment and sale of an aircraft. The parties filed a joint statement of material facts in the district court. A review of those facts reveals that Aspen purchased an aircraft from EAF Aircraft Sales, Inc. (EAF) and contracted with EAF to act as a broker in the resale of the airplane. After EAF contacted Banner, Banner and Aspen entered into a Consignment Agreement on September 24, 1986 which provided inter alia that 1) Banner had the right to resell the aircraft without notice; 2) if Banner gave written notice of the resale, Banner would pay Aspen the amount due plus interest accrued between the closing date and final payment date regardless of whether the sale was consummated; and 3) if Banner did not give written notice during the consignment period, Banner was obligated to return the plane within three days following the end of the period.
 
 
 3
 In November 1986, Banner sued Aspen and EAF in the United States District Court for the Northern District of Ohio, alleging breach of warranty and misrepresentations. On February 20, 1987, the parties settled this litigation. Under the terms of the Mutual Settlement and Release (Settlement) executed on that date, EAF agreed to buy the original aircraft from Banner and to sell Banner a new aircraft. Aspen, EAF and Banner were all parties to the Settlement. Although Aspen was not a party to the February 20 Resale Agreement between Banner and EAF, the Resale Agreement was referenced in the Settlement. Pursuant to the Additional Agreement between Banner and Aspen of the same date, they agreed that July 1, 1987 was the last day that Banner could exercise its right to resell the aircraft and that Banner would pay Aspen interest on the balance due accruing between October 15, 1986 and the final payment date or July 1, 1987, whichever occurred earlier.
 
 
 4
 Banner and Aspen did not directly communicate between February 20, 1987 and July 2, 1987. On July 2, 1987 Aspen wrote Banner demanding immediate return of the aircraft on grounds that Banner never gave notice of its desire to purchase the aircraft. On July 3, 1987, Banner responded that pursuant to the February Settlement, Aspen had been on notice for 4 months that Banner intended to resell the aircraft. Banner further noted that it was prepared to wire funds to Aspen by July 7, 1987. On July 7, 1987 Aspen replied that it did not consider the February Settlement to constitute notice of the resale and that therefore the option to purchase had expired. Aspen stated that it would entertain any offer to purchase the aircraft that Banner wished to make.
 
 
 5
 Aspen sued Banner for replevin and Banner then sued Aspen for specific performance. These claims were consolidated. On August 14, 1987, Aspen and Banner reached an interim settlement and closed the sale of the aircraft in escrow. Banner paid Aspen the purchase price due under the agreements plus interest through August 14.
 
 
 6
 Banner amended its complaint and asked the court to declare that notice had been given and that Aspen was bound to close the sale, and asked for an award of damages for the interest paid due to Aspen's failure to close on July 7. Aspen brought a conversion claim alleging damages for the increased value of the aircraft due to Banner's repair.
 
 
 7
 After a bench trial, the district court granted judgment in favor of Banner on the notice and interest counts and dismissed the remaining counts as moot.
 
 ANALYSIS
 
 8
 Because this dispute involves the construction of an unambiguous contract, we review the district court decision de novo. National Diamond Syndicate, Inc. v. United Parcel Service, Inc., 897 F.2d 253, 256 (7th Cir.1990). The district court applied Illinois law, and the parties do not dispute this.
 
 I. NOTICE
 
 9
 The first issue on appeal is whether the February 20, 1987 Settlement constituted notice by Banner of its intention to purchase the aircraft from Aspen, thus obligating Aspen to close the sale on July 7, 1987. Because the parties agree that the documents in question are unambiguous, the focus of our inquiry is on the pertinent provisions of those documents. Reference to the resale of the aircraft by Banner to EAF was made in both the February 20, 1987 Settlement between Aspen, Banner and EAF and in the February 20, 1987 Additional Agreement between Banner and Aspen. The Settlement recites
 
 
 10
 Whereas Banner and EAF have entered into certain purchase agreements, whereby EAF will sell to Banner a Gulfstream II Serial No. 111 and Banner will sell to EAF a Gulfstream II Serial No. 012.
 
 The Additional Agreement states
 
 11
 [M]ade this 20th day of February, 1987 by and between Banner ... and Aspen ... in connection with ... that certain Aircraft Sales Agreement, of even date herewith, between Banner and EAF.
 
 
 12
 Aspen was represented by counsel at all phases of the settlement negotiations and represented that it had read the Settlement agreement and knew of the contents. The resale was an integral part of the settlement and was essential to making Banner whole. Parties to an agreement are estopped from denying the recitals contained therein. Matter of Pubs Inc. v. Bank of Illinois in Champaign, 618 F.2d 432, 438 (7th Cir.1980). Moreover, Aspen's attorney and officer Edwin Josephsen testified at trial that he read these documents and was aware of Banner's intention to resell the aircraft to EAF. Accordingly, we find that the February 27, 1987 Settlement was sufficient notice of Banner's intention to resell the aircraft.
 
 
 13
 Aspen contends that the settlement documents did not constitute notice for three reasons, all of which are without merit. First, Aspen contends there was no statement by Banner that it was giving notice, and that such a statement was required by the Consignment Agreement. However, the plain language of paragraph 3(a) of the Consignment Agreement simply requires that Banner give "written notice of resale." There are no further requirements as to the substance or form of the notice.
 
 
 14
 Second, Aspen contends that because the consignment period was extended by the Additional Agreement and the parties did not delete paragraph 4 of the original Consignment Agreement--which provides for a remedy if Banner does not give notice--Banner could not simultaneously give notice in the settlement documents. There is nothing in any of the documents to support this contention. The resale period was extended by the Additional Agreement because the original aircraft was not completely refurbished. The Additional Agreement was silent as to notice. Moreover, other than specifically deleting paragraph 6 and amending the interest rate and dates in paragraph 3, the original Consignment agreement remained intact. As Banner correctly points out, several of the provisions remaining had already been rendered moot, and therefore failure to delete a particular paragraph is of no significance.
 
 
 15
 Aspen's final contention is that because Banner's attorney testified that he believed the risk of loss remained on Aspen after February 20, 1987, notice had not been given under the terms of the Consignment. Aspen mischaracterizes the Consignment Agreement which explicitly provides at paragraph 3(b) that risk of loss passes to Banner "upon delivery of the FAA Aircraft Bill of Sale." Paragraph 3(c) provides that if there is a total loss before notice is received, Aspen is entitled to the insurance proceeds and Banner entitled to its share of the security deposit. This paragraph does not does alter when risk of loss passes; it simply clarifies the rights of the parties to insurance proceeds if that loss occurs before notice is received.
 
 
 16
 As of February 20, 1987, Aspen had notice, in writing, that Banner was reselling the aircraft to EAF. The aircraft swap was the centerpiece of the settlement of the Ohio litigation. This was not an incidental piece of the settlement of which Aspen can claim ignorance. Because Aspen had notice of Banner's intent to resell, Aspen was bound to complete the sale and was not entitled to return of the aircraft or to damages for conversion.
 
 II. INTEREST AWARD
 
 17
 The district court determined that because Banner was ready to close as of July 7, 1987, but Aspen wrongfully refused to close until August 14, 1987, Aspen was not entitled to the interest paid by Banner after July 7, 1987. Aspen does not dispute the fact that Banner was ready to close on July 7, 1987 or that Aspen refused to close. Aspen argues that Banner was responsible for the additional interest accrued because Banner's failure to pay on July 1, 1987 constituted a breach. Aspen also contends that Banner was not damaged because it had use of the money through August 14, 1987.
 
 
 18
 Aspen does not argue that Banner's alleged "breach" nullified its obligation to close or somehow gave it an open-ended right to determine when to close. Aspen simply states, without supporting authority, that Banner did not pay on time and therefore Banner was required to pay interest for as long as Aspen took to close.
 
 
 19
 The Additional Agreement extended Banner's right to resell the aircraft to July 1, 1987, and required payment of interest from October 15, 1986 through the earlier to occur of the Final Payment Date or July 1, 1987. This language implies that final payment must be received by July 1, 1987 and that therefore Banner failed to make a timely payment. The district court recognized this in awarding interest through July 7, 1987.
 
 
 20
 However, the Consignment Agreement does not provide that the deal was off if payment was not made by July 1, 1987. As the district court noted, the Consignment Agreement is silent as to remedies for late payment. We may not create a remedy to cover unplanned circumstances. Illinois Bell Telephone Co. v. Reuben H. Donnelley Corp., 595 F.Supp. 1192, 1199 (N.D.Ill.1984). The Consignment Agreement provides that if notice is not given during the Consignment period, Banner must return the plane to Aspen. Failure to receive notice was, in fact, the basis for Aspen's initial refusal to close and not failure to receive payment.
 
 
 21
 Under the terms of the Consignment Agreement, Aspen had notice of the resale, and both Aspen and Banner were bound to complete the sale. Any delay in closing after July 7, 1987 was the fault of Aspen, and Banner was not required to pay interest after that date. Therefore, Banner was entitled to return of the $23,877.68 interest paid between July 7 and August 14, 1987.
 
 CONCLUSION
 
 22
 The plain language of the documents at issue shows that Banner gave written notice as of February 20, 1987 and that once written notice was given, both sides were obligated to complete the sale. Banner was entitled to judgment on the notice issue and to a refund of the interest it paid from July 7 through August 14, 1987. The decision of the district court is
 
 
 23
 AFFIRMED.